Faulkner *v.* Erie Railway Company.

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]

---

FANNY FAULKNER and another, adm'rs &c. of John C. Faulkner, deceased *vs.* THE ERIE RAILWAY COMPANY.

Ordinarily, an employer is not liable for injuries to one of his employees occasioned by the negligence of another employee engaged in the same general business. Such employees on entering the service take upon themselves, as an incident to the hiring, the ordinary risks and dangers arising therein, which includes the negligence or carelessness of their fellow servants.

No distinction arises from the different grades or ranks of the employees, nor from their being engaged in different kinds of work; provided the services tend to accomplish the same general purpose.

An employer is, however, responsible for injuries to employees arising from his personal neglect, or from the want of ordinary care and precaution on his part, in the selection of employees.

Where a railroad bridge was well built, of good sound materials, upon a plan in common use, and the evidence as to its strength and capacity was abundant, and its sinking was in no sense due to any defect in its original construction, but to a process of natural decay, called dry rot; and the day before it fell it had been inspected by the repairer of bridges, and the division superintendent, competent men, and examined, tested and watched under the weight of a train of cars, and was deemed by them entirely sound and safe; *Held* that the company was not liable to the representatives of an employee who was killed by the falling of the bridge, either on the ground of a defect in its construction constituting negligence, or want of ordinary care, or by reason of the employment of incompetent, unskillful or improper persons to examine the bridge.

Faulkner *v*. Erie Railway Company.

*Held, also*, that to render the company liable, on the latter ground, it must affirmatively be made to appear that proper care was not used in the selection of its agents; and that by the exercise of proper care those agents would have been rejected as incompetent. The company is not a guarantor of competency or fitness in its employees.

*Held, further*, that the company was not responsible for the insufficiency of the bridge, in the absence of notice; unless the company was ignorant of its condition through its negligence or want of proper care.

THE plaintiff recovered $5000 damages on the trial of this action at the Tioga circuit, in August, 1866. John C. Faulkner, the intestate, was an oilman and brakeman in the employ of the defendants, and while running on the defendants' road, was killed by the breaking down of a bridge of the defendants' over the Conhocton river, and the consequent fall of the car on which he was riding. The action is brought by his representatives, to recover damages for his death ; and it is alleged that such death was caused by the negligence of the defendants in the care and maintenance of such bridge. The bridge was built in November, 1855, and broke down in May, 1865, from the effect of dry rot in some of its timbers. On the day before it broke it was examined by Gurmsey, who has charge of repairs on that division, and by Pratt, the division superintendent. They gave it a careful examination, applied the usual tests, watched the effect of a freight train passing over it while there, and pronounced it safe and sound. Evidence was given of the manner in which this bridge was built, and of the length of time bridges might safely stand without being rebuilt. There was no evidence of incompetency or want of skill on the part of Gurmsey or Pratt, or that the bridge was known to be defective before its fall. Evidence was given tending to show that a different mode of constructing this bridge would have made it stronger, but it was not shown to be a defective or unsafe bridge, in its original manner of construction.

The judge submitted to the jury two propositions, to which the defendant excepted :

1st. If the bridge broke down in consequence of any defect

in its construction which could have been avoided by the exercise of ordinary care and skill, the plaintiffs are entitled to recover.

2d. If the bridge broke down in consequence of having been used, without being rebuilt, longer than it was generally understood by competent persons, having the care of railroad bridges, to be safe to use such bridges without rebuilding them, the plaintiffs are entitled to recover.

. This is an appeal from an order of the special term, denying a new trial, and from the judgment entered against the defendants on such order.

' *H. Gray,* for the defendant.

*J. J. Taylor,* for the plaintiff.

*By the Court,* BOARDMAN, J.    There are certain legal propositions which the authorities cited by counsel sustain :

I.  Ordinarily, the defendant is not liable for injuries to one of its employees occasioned by the negligence of another employee engaged in the same general business.  Such employees on entering the service take upon themselves as an incident to the hiring, the ordinary risks and dangers arising therein, which includes the negligence or carelessness of their fellow servants.  (*Farwell* v. *Bost. and Worc. R. R.* 4 *Metc.* 49. *Priestley* v. *Fowler,* 3 *Mees. & Wells.* 1.   *Coon* v. *Syr. and Ut. R. R.* 5 *N. Y. Rep.* 492.   *King* v. *Bost. and Worc. R. R.* 9 *Cush.* 112.   *Gillshannon* v. *S. B. R. R. Co.,* 10 *id.* 228. *Albro* v. *Agawan Can. Co.,* 6 *id.* 75.   *Hayes* v. *West. R. R.* 3 *id.* 270.   *Wright* v. *N. Y. Cent. R. R.* 25 *N. Y. Rep.* 562.' *Sherman* v. *R. and S. R. R. Co.,* 17 *id.* 153.   *Russell* v. *Hudson Riv. R. R. Co., Id.* 134.   *Seaver* v. *Bost. and M. R. R.* 11 *Gray,* 466.   *Tunney* v. *Midland R. R.* 1 *Eng. Law R. C. P.* 291.   *Morgan* v. *Vale of Neith R. R.* 1 *Q. B.* 149. *Feltham* v. *England,* 2 *id.* 33.)

In addition to the general rule, these cases establish that

no distinction arises from the different grades or ranks of the employees, nor from their being engaged in different kinds of work, provided the services tend to accomplish the same general purpose.

II. The defendant is, however, responsible for injuries to employees arising from its personal neglect, or from the want of ordinary care and precaution on the part of the master, in the selection of employees, appliances and machinery. (*Ryan* v. *Fowler,* 24 *N. Y. Rep.* 410. *Keegan* v. *West. R. R.* 8 *N. Y. Rep.* 175. *Marshall* v. *Stewart,* 33 *Eng. L. and Eq. Rep.* 1. *Patterson* v. *Wallace,* 28 *id.* 48. *Wright* v. *N. Y. Cent. Railroad,* 25 *N. Y. Rep.* 562. *Snow* v. *Housatonic Railroad Co.,* 8 *Allen Mass. Rep.* 441. *Gilman* v. *East. R. R. Co.* 10 *id.* 236. *Garby* v. *Harris,* 11 *id.* 112. 28 *Vermont R.* 59.)

I am satisfied by these cases, and by the law as therein laid down, that there was no negligence on the part of the defendant creating a liability for the damages suffered by the plaintiffs' intestate. This bridge was well built, of good sound materials, upon a plan in common use. The evidence as to its strength and capacity is abundant. There was, therefore, no original defect in its construction, constituting want of ordinary care, or negligence on the part of the defendants. This is true, or else the plaintiff is involved in the inconsistency of insisting upon a recovery on the ground that the bridge had stood so long under constant use, that the defendant was guilty of negligence in not rebuilding it. Both positions cannot be true. It could not have been so defective as to be dangerous, and yet stand so long as to become dangerous upon the presumption that it ought to be rebuilt by reason of its age. Besides, its destruction was in no sense due to any defect in its original construction, but to a process of natural decay, called dry rot. There is evidence showing that Gurmsey, who inspected this bridge the day before its destruction, had had charges of bridges since 1848, and was one of the best men on the road ; that Pratt, the division

superintendent, had been in the employ of the defendant since 1850, as track master and superintendent. No question as to the competency or fitness of these men for their respective duties, appears to have been raised upon the trial. The defendant is not, therefore, liable by reason of employing incompetent, unskillful or improper persons. The defendant is not a guarantor of competency or fitness in its employees. It must affirmatively be made to appear that proper care was not employed in the selection of these agents, and that by the exercise of proper care these agents would have been rejected as incompetent. Nor is the defendant responsible for the insufficiency of this bridge, in the absence of notice, unless the company was ignorant of its condition through its negligence or want of proper care. It is not claimed that the company had any notice which could charge it with knowledge, except the length of time the bridge had been standing. That was not an unusual time. Other bridges have been standing much longer. Every bridge must be judged by its exposure, its length of span, its materials, its means of protection. While time is an important element, the other considerations are equally important. All taken together, upon an examination, must have weight upon the necessity of a rebuilding of the bridge. Here, too, the skill and competency of the bridge builder is brought into action. His error of judgment is not the negligence of the company. The decision should be based upon a skillful examination by competent persons. The time cannot be fixed and limited by the verdict of a jury. Each case must be judged of by itself. The bridge had every appearance of being sound and safe ; it was examined and tested and watched, under the weight of a train of cars, on the day before the accident happened, by the repairer of bridges and the superintendent of that division, and was deemed entirely sound and safe. I do not see what more could have been legally required of the company in the exercise of proper care than was done in this case. If this was negligence in the defendants then a latent defect in a steam boiler, a rotten

plank in a ship, a flaw in an iron rail, an unknown weakness in a factory floor or wall, would charge the master with all the damages suffered by his employees in consequence. In the case of common carriers, the liability would be as broad in case of employees as passengers, for injuries resulting from accidents like the one in question. On the contrary, I am convinced they must either have notice of such defects, or else have neglected to use the ordinary care and skill which would have given knowledge. I am confirmed and supported in the conclusion to which I have come, by the opinion of Mr. Justice Marvin, in the case of *Lucy A. Warner, adx.* v. *The Erie Railway Co.* (*Mss.*) in an action for damages, in causing the death of the plaintiff's husband by the falling of this same bridge, and on this same occasion. The evidence, so far as it appears, was substantially the same, and the judge, by a very satisfactory process of reasoning, reaches the conclusion, that the complaint should be dismissed.

I think the defendant's motion for a nonsuit should have been granted; that the judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event.

MASON, J. concurred.

BALCOM, J. dissented.

New trial granted.

[BROOME GENERAL TERM, July 9, 1867. *Mason, Balcom* and *Boardman,* Justices.]