## Richmond.

### CLARK'S ADM'R v. R. & D. R. R. COMPANY.

March 13th, 1884.

| 78 | 709 |
| 88 | 543 |
| 88 | 856 |
| 78 | 709 |
| 89 | 343 |
| 78 | 709 |
| 90 | 354 |
| 90 | 408 |
| 90 | 624 |
| 78 | 709 |
| 91 | 174 |
| 78 | 709 |
| 95 | 105 |
| 78 | 709 |
| 110 | 704 |

1. PRACTICE AT COMMON LAW—*Demurrer to evidence—Rule.*—Either party may demur and joinder will be compelled, unless case clearly against demurrant, or court doubts what is reasonably inferable from the evidence. Demurrant admits whatever is reasonably inferable by jury from demurree's evidence, and waives all his own which contradicts demurree's, or the credit whereof is impeached, and all inferences from his own not necessarily flowing from it. *R. and D. R. R. Co.* v. *Moore's Adm'r, ante,* 93.

2. NEGLIGENT INJURIES—*Contributory negligence—Compensation.*—Where defendant's negligence was proximate cause of injury to plaintiff, who did not, by want of common care himself, contribute to such injury, or where defendant, by exercise of care, could have prevented the consequences of plaintiff's carelessness, plaintiff may recover compensation.

3. IDEM—*Idem—Employer and employee—Case at bar.*—C, a minor, but with his father's approval, employed as brakeman on freight train, while doing duty on top of car by moonlight, was killed by a colliding highway bridge, not high enough for a man, erect on car-top, to pass under. When employed he was warned by company's agent to look out for highway bridges, and his co-brakemen told to show him the dangerous ones. Under this bridge in daylight C had thrice passed. That night, leaving the station next the bridge, C was warned to look out for the bridge. On nearing bridge co-brakeman, seeing C erect on car-top, shouted to him to stoop, but C did not stoop. Action by C's administrator, company demurred to the evidence.

HELD:

1. Defendant was entitled to demur and plaintiff compelled to join.

2. Though defendant may have been culpable for lowness of bridge, yet C's carelessness contributed to injury, and defendant is not liable.

3. The risk of collision with such bridges was incident to the employment. C had opportunity to know their dangerous character, which must have been contemplated when he accepted employment.

Error to judgment of circuit court of Danville, rendered June 14th, 1880, in action of trespass on the case wherein Hatcher F. Clark, administrator of James H. Clark, deceased, was plaintiff, and the Richmond and Danville Railroad Company was defendant. Object of action was compensation for defendant's negligent killing of intestate, an employee on said road. Defendant demurred to evidence. Verdict for $7,500, subject to judgment on the demurrer, which was sustained. To this judgment plaintiff obtained a writ of error.

Opinion states the facts.

*Flournoy & Martin, Carrington & Fitzhugh*, for the plaintiff in error.

*H. H. Marshall*, for the defendant in error.

LACY, J., delivered the opinion of the court.

The deceased, James H. Clark, was a brakeman upon a freight train of the defendant company. He lost his life on the 21st day of February, 1880, while in discharge of his duties as brakeman, and his administrator, the plaintiff in error, brought this suit to recover of the defendant in error damages, on the ground that his death was due to the negligence of the defendant in error.

The defendant demurred to the evidence, and the court compelled the plaintiff to join therein. The jury assessed the damages of the plaintiff, if judgment should be for him, at $7,500. The court sustained the demurrer and gave judgment for the defendant thereon. Thereupon the plaintiff applied for a writ of error and *supersedeas* to this court, which was awarded May 18, 1882.

The plaintiff's intestate's duty as brakeman on a freight train required him to be on the top of the moving train.

In his service upon the said freight train, while running from Greensboro' to Richmond, he was struck by a highway bridge which spans a cut on the said railroad line, in the suburbs of the city of Danville, and killed by the collision. In coming to Danville the train runs down grade, which begins about a mile before reaching the said highway bridge. It was impossible for a man of ordinary stature to stand erect on the freight cars, and pass with safety under said bridge, and such is the case with most of the overhead structures on the line of this road.

It is insisted that the defendant company was guilty of negligence in constructing its overhead bridges so low as to require a brakeman who is doing duty to stoop in order to pass under the same with safety; and that it was negligence in the said company not to have any ascertained and established system of bridge signals to give notice of the approach to these bridges, and not to have any guards across the track to warn its employees of the approaching danger; and that in this case there was no sufficient warning given this brakeman, who was a new hand, and under twenty-one years of age, of the approach to this particular bridge, which was passed in the night time. The evidence shows that the said employee was of the usual size and stature of full grown men, being six feet high, and weighing one hundred and eighty pounds, and having the appearance of a full grown man; and the fact that he was under age was unknown to the company, or any of its agents; that the said employee had been employed by the said company some two years before without objection on the part of his father, who suffered his son to collect his own pay from the company, and pay it to him; that for some time before he sought and obtained employment as brakeman, he had been employed in the company's yard in Manchester, shifting cars, making up trains and the like. The evidence shows that at the time when his service.

was engaged by the company's agent, the said employee was warned to look out for the overhead bridges, and his fellow brakemen were instructed to show him the bridges, and to warn him of the dangers attending the same. The said employee had been under this highway bridge three times, and in the day time, and was killed in going under the same in the night time, but that it was not a dark but a moonlight night; that on leaving the station west of Danville, his fellow brakeman had said to him, "now we are going down to Danville, look out for the bridge"; and the bridge in question was the only bridge in going from there down to Danville. When nearing the bridge his fellow brakeman seeing he was standing, endeavored to warn him of the danger, and shouted to him to stoop, but he remained standing as if not hearing or noticing, and was struck and killed by the bridge.

The principles upon which a demurrer to evidence is to be considered have been often stated by this court. Upon the demurrer to evidence, the practice is to allow either party to demur, unless the case be clearly against the party offering the demurrer, or the court should direct what facts should be reasonably inferred from the evidence demurred to, in which case the jury is the fit tribunal to decide; to put all the evidence offered on both sides into the demurrer, and then to consider the demurrer as if the demurrant had admitted all that could reasonably be inferred by the jury from the evidence given by the other party, and waived all the evidence on his part which contradicts that offered by the other party, or the credit of which is impeached, and all inferences from his own evidence which do not necessarily flow from it. See the opinion of Stanard, J., in *Ware* v. *Stephenson,* 10 Leigh, 155; *Trout* v. *The Va. and Tenn. R. R. Co.,* 23 Gratt. 619; *Tutt* v. *Slaughter's Adm'r,* 5 Gratt. 364; *Green* v. *Judith,* 5 Rand. 1; *Hansbrough's Ex'or* v. *Thom,* 3 Leigh, 147; *Stevens* v. *White,*

2 Wash. 203, 210; *Union Steamship Company* v. *Notting-ham,* 17 Gratt. 115; *Richmond and Danville R. R. Co.* v. *Morris,* and the *Same* v. *Anderson,* 31 Gratt. 200 and 812; *Richmond and Danville R. R. Co.* v. *Moore, ante,* p. 93.

The plaintiff in error assigns as error in this case that he was compelled in the circuit court to join in the demurrer. Either party, plaintiff or defendant, has a right to demur to the evidence, and the other party will be compelled to join in the demurrer unless the case be plainly against the demurrant, and his object in demurring seems to be clearly nothing else but delay. *Trout* v. *The Va. and Tenn. R. R. Co.,* 23 Gratt. 619; *Boyd's Adm'r* v. *City Savings Bank,* 15 Gratt. 636; *Hyers* v. *Green,* 2 Call, 556; *Rohr* v. *Davis,* 9 Leigh, 30; *Eubank's Ex'or* v. *Smith,* 77 Va. 206.

Upon the evidence in this case, it cannot be said that the evidence was plainly against the demurrant, or that the object of the demurrant was clearly nothing else but delay, and the plaintiff was properly required to join therein. When we consider this evidence in the light of the authorities cited, and the established principles which govern in the case of a demurrer to evidence, we must determine first whether the defendant was guilty of such negligence as was the immediate cause of the injury received by the deceased, and whether there was contributory negligence on the part of the deceased; whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence, or want of ordinary or common care and caution, that but for such negligence or want of ordinary care or caution on his part, the misfortune would not have happened. In the first case, the plaintiff would be entitled to recover. In the latter, not; as but for his own fault, the misfortune would not have happened. Mere negligence or want of ordinary care or caution would not, however, disentitle him to re-

cover, unless it were such that but for that negligence or want of ordinary care and caution, the misfortune could not have happened, nor if the defendant might, by exercise of care on his part, have avoided the consequence of the neglect or carelessness of the plaintiff. The negligence charged against the defendant company is, as we have seen, that the overhead bridges are constructed so low as not to allow a person to stand erect upon the top of freight cars passing thereunder; and in the second place, not sufficiently warning the deceased of the threatened danger.

In the case of *Devitt* v. *Pacific Railroad,* 50 Mo. Rep. 302, questions similar to these raised by this record were considered and decided by the court. The plaintiff's son was a minor and was killed riding on the top of a freight car passing under a bridge. The accident occurred in the day time, and the deceased had been in the employ of the company about three weeks, had frequently passed under the bridge, and had been repeatedly warned to look out for this and other bridges; and when last seen, he was sitting upon the brake facing the bridge. The court in that case held that " it would be difficult to imagine a clearer case of contributory negligence, and if one guilty of it could recover, or his friends for him, if the experiment proved fatal, we must necessarily ignore the legal consequences of such negligence. . . . An employee or servant cannot recover for injuries received from the negligence of other servants when the principal is not at fault. But if the principal has been guilty of fault or negligence either in providing suitable machinery, or in the employment or selection of suitable agents or servants, and injury arise in consequence, he must respond in damages. This liability is, however, modified, when the servant himself, well knowing the default of his principal, as in providing defective or unsuitable machinery, voluntarily enters upon the employment. . . . By so doing he assumes the risk, and

hence cannot charge it to his employer. If persons are induced to engage, in ignorance of such neglect, and are injured in consequence, they should be entitled to compensation; but if advised of it, they assume the risk. They contract with reference to things as they are known to be, and no contract is violated, and no wrong is done if they suffer from a neglect whose risk they assumed." Citing *Wright* v. *N. Y. C. R. R.*, 25 N. Y. 566; *Brazzell* v. *Laconia M. Co.*, 48 Me. 113; *Thayer* v. *St. L. and T. H. R. R.*, 22 Ind. 26; *Hayden* v. *Smithville M. Co.*, 2 Conn. 548; *Mud River and L. E. R. R.* v. *Barber*, 5 Ohio, 541.

In the case of *Owen* v. *The New York Central Railroad Company*, 1 Lansing R. 108, a brakeman, in the employ of a railroad company, while discharging duties in the line of his employment, upon the roof of a freight car, was carried against a highway bridge and sustained injuries, for which he brought an action against his employer. The bridge was some three and a half feet higher than the top of the highest freight car in use by the company. The brakeman had entered into the employment of the company with knowledge of the position and height of the bridge, and he had had opportunity of informing himself as to its continuance in the same position. It was held that "the plaintiff should have been non-suited, the danger from the bridge being clearly incident to the labor he undertook to perform. In view of the brakeman's knowledge as to the bridge, his omission to avoid the accident by stooping was such want of ordinary care and caution as would have defeated his action if otherwise maintainable. Having assumed the risk of injury to his person from the bridge, evidence offered by him upon the trial tending to show its dangerous character was properly excluded. The danger was open and obvious, and within the plaintiff's personal knowledge at the time he entered the defendant's employment. It was a danger clearly incident to the ser-

vice which he undertook to perform. He knew as well as his employer the perils of the business, at least as respects the bridge in question, and the law will imply that he assumed the risk of personal injury," citing *Sherman* v. *The Rochester and Syracuse R. R. Co.*, 17 N. Y. 153; *Faulkner* v. *The Erie R. R. Co.*, 49 Barb. 324; 39 N. Y. 468.

" This is a well settled rule; but if the rule were otherwise, upon the evidence in this case the plaintiff was not entitled to recover upon another ground. The injury was caused by his own negligence. It is admitted that he knew that this was a low bridge, and he must have known that he could not pass under it while on the top of the cars, unless he stooped, without injury. He might have avoided all injury by the exercise of the most ordinary care and caution. The exception taken to the ruling of the court, excluding the evidence offered by the plaintiff, that other persons had been killed at the same crossing, must be overruled. That evidence was wholly immaterial if the plaintiff took upon himself the risk of injury to his person from that structure, as he undoubtedly did."

In the case of the *Baltimore and Ohio Railroad Co.* v. *Stricker*, 51 Md. R. 47, the court said upon this question : " This suit was brought by the appellee to recover for injuries received by being carried against a bridge spanning the appellant's road while he was on the top of a ' house car' in the discharge of his duty as conductor of a freight train. . . . To entitle the plaintiff to maintain this suit, it was necessary to prove that the company had been guilty of negligence which directly caused the injury; that is to say, that in the relation which existed between the appellee and the company, the latter had failed or neglected to perform some duty towards the appellee which was devolved upon it by law; and, secondly, it must appear that the appellee was not guilty of any negligence on his part, or any want of reasonable prudence and caution to

avoid the accident.    1st. As to the alleged negligence on the part of the company.    In what did this consist ?    It was said it was negligent in constructing the bridge so low that a conductor or brakeman could not pass under it in safety on the top of a house car where his duty required him sometimes to be.    But there is no evidence to support this position.    On the contrary, all the proof shows that the employees of the company, and the appellee among them, every day passed under the bridge in safety by observing the simple and easy precaution of stooping or sitting down while passing under the bridge.

"No negligence can be imputed to the company because the struts of the bridge were not high enough to allow a person to pass under them standing upright on top of the cars.    *Baylor* v. *Del. and W. Railroad Co.,* 11 Vroom, 23. It was not required of the appellee to stand upon his feet while passing the bridge.

"Nothing is better settled than that the implied contract between the employer and the employee is that the latter takes upon himself all the natural risks and perils incident to the service."    *Moran's Case,* 44 Md. 292.

"When a servant enters upon an employment, he accepts the service subject to the risks incidental to it.    An employee who contracts for the performance of hazardous duties, assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he had opportunity to ascertain.

"If a man chooses to accept employment, or continue in it, with the knowledge of the danger, he must abide the consequences so far as any claim against the employer is concerned."    *Wooley* v. *M. D. Railway Co.,* 2 L. R. (Ex. Div.), 389.

What then was the legal duty of this company?    It was the duty of the company to exercise all reasonable care, to provide and maintain safe, sound and suitable machinery,

roadway structures and instrumentalities; and it must not expose its employees to risks beyond those which are incident to the employment, and were in contemplation at the time of the contract of service; and the employee has a right to presume that the company has discharged these duties. *O'Connell's Case*, 20 Md. 212; *Scally's Case*, 27 Md. 589; *Winder's Case*, 32 Md. 419.

In the case in hand the deceased, after service in the company's depot grounds for some time, engaged about shifting cars, coupling cars, and such like duties, sought employment as brakeman. As this service was performed in the town of Manchester, on the banks of the James river, which is spanned by one of the bridges of this railroad company, and close to the same, it might be presumed, perhaps, that he knew of the character of the duties of a brakeman performed before his eyes every day. But in this case it is clearly proved that he was instructed by his employer at the time of the contract of service as to the dangerous character of the service required of a brakeman, and especially as to the danger in passing under these overhead structures without sitting down or stooping, and that he was notified in particular about this particular bridge; and that it was shown to him, and that he passed under it in the broad daylight, which he could not have done without stooping; that after passing under this bridge three times, he was specially warned about it again as he was about to pass under it on the fatal night; that he did not exercise the precaution required of stooping, and that he was standing up when he was struck. Why he did not stoop or sit down will never be known, as he was killed by the collision. Whether he forgot to stoop, as he had before done in passing under this bridge, is not known, but his negligence in not exercising this simple and ordinary care and caution was the proximate cause of his death, without which it would not have occurred,

and the appellant cannot recover damages therefor of the company. While we think the accident was caused by want of reasonable care on the part of the appellant's intestate, we do not rest our decision solely on this ground. This peril was one incident to the employment, in contemplation at the time of the contract, and arising from causes open and obvious, the dangerous character of which the deceased had an opportunity to ascertain, and the risk of which he assumed.

Having stated our opinion upon the rules of law applicable to the case, which deny to the appellant the right to recover, it is not necessary to more specially notice the several assignments of error contained in the record. We are of opinion that there is no error in the judgment complained of and appealed from in this case, and the same must be affirmed.

FAUNTLEROY, J., dissented.

JUDGMENT AFFIRMED.