# Richmond.

## DARRACOTT V. CHESAPEAKE & OHIO R. R. CO.

### MAY 5th, 1887.

1. APPELLATE COURT—*Exceptions—Waiver.*—Declaration being held bad on demurrer, defendant, by amendment and going to trial on the merits, waives his objection. *Hopkins, Brother & Co.* v. *Richardson,* 9 Gratt. 485.

2. RAILROAD COMPANIES—*Employees—Duties.*—Company's duty to its servants is discharged by ordinary care, and *vice versa.*

3. NEGLIGENCE—*Case at bar.*—The frequent "three-link couplings," if made when the cars are still, according to the known rules of the defendant company—

HELD :

   Not to expose coupler to perils beyond those incident to his employment and assumed by him.

4. CONTRIBUTORY NEGLIGENCE—*Case at bar.*—Any negligence of servant that is the proximate cause of *the injury—such as attempting to make* the three-link coupling when he may readily see that the car is in motion, and in disobedience of the defendant's rules, defeats his actions for such injury.

Error to judgment of circuit court of Hanover county, rendered April 28th, 1885, in an action wherein Thomas P. Darracott was plaintiff and the Chesapeake and Ohio Railroad Company was defendant.

This was an action of trespass on the case in the circuit court of Hanover county. The action was brought to recover damages for injuries received by the plaintiff while coupling cars of the defendant company. The declaration alleged that the plaintiff, when the accident occurred, was in the employ of the company as a brakeman, and that the injuries complained of were caused by the defective fixtures for coupling on a certain car which he was in the act of

coupling to another. There was a demurrer to the declaration, which the circuit court sustained, with leave, however, to the plaintiff to amend. The declaration was accordingly amended by adding an averment that the plaintiff was "without knowledge of the defective condition of the said drawheads, bumpers, and fixtures for coupling, acquired in time to avoid the said injury hereinafter complained of and sustained," etc. The defendant thereupon pleaded the general issue, upon which plea issue was joined, and the jury having heard the evidence, returned a verdict for the plaintiff for $4,500 damages. The court, upon motion of the defendant, set aside the verdict, and granted a new trial; and at a subsequent term, neither party requiring a jury, judgment was given for the defendant, whereupon the plaintiff obtained a writ of error. The opinion states the case.

*Sands, Leake & Carter*, for the plaintiff in error.

*Wm. J. Robertson* and *H. T. Wickham*, for the defendant in error.

LEWIS, P., (after stating the case) delivered the opinion of the court.

The case presents no new question, and may be briefly disposed of. The first assignment of error is that the circuit court erred in sustaining the demurrer to the declaration. A sufficient answer, however, to this objection is, that by amending the declaration and going to trial on the merits, the right to object to the ruling of the court on the demurrer was waived. This is a well settled rule, in support of which counsel for the defendant in error refer to the pertinent language of Nelson, C. J., in *Jones* v. *Thompson*, 6 Hill, 621, who said: "By amending and pleading

the general issue, the defendant admitted the correctness of the judgment on the demurrer. Had he intended to rely upon any error in that judgment, he should not have amended, but left the issue upon the record. * * Who ever heard of an issue at law upon the record in this court after the party demurring has availed himself of the privilege by joining an issue of fact?" Upon a similar point in *Clearwater* v. *Meredith*, 1 Wall. 25, the supreme court of the United States said: " When the plaintiff replied *de novo*, after a demurrer was sustained to his original replication, he waived any right he might have had to question the correctness of the decision of the court on the demurrer. In like manner, he abandoned his second replication, when he availed himself of the leave of the court, and filed a third and last one." And the same rule prevails in equity. *Marshall* v. *Vicksburg*, 15 Wall. 146. No other authority, however, need be cited than the decision of this court in *Hopkins, Brother & Co.* v. *Richardson*, 9 Gratt. 485, which is directly in point, and in accordance with the view we have expressed.

The question, then, is whether the plaintiff is entitled to recover upon the evidence before the jury, which is certified with the record, and upon which the case was afterwards decided by the circuit court. And in this connection two questions have been raised: (1) Whether the company was negligent; and (2) whether the plaintiff was guilty of such contributory negligence as to defeat a recovery.

The evidence shows that the car, the coupling fixtures of which were defective, left Hinton, W. Va., in good condition, coming east, on the twenty-sixth of December, 1881. It was a flat car, loaded with lumber, and was one of a number of freight cars composing the same train. When it arrived at Staunton its drawhead was found to have been pulled out or broken, which necessitated the

use of what is called "the three-link coupling," in order to carry it to its destination without delay. The evidence also shows that such accidents are of frequent occurrence, and that upon such occasions, to avoid delay in the transmission of freight, the three-link coupling is usually resorted to. It is made by attaching two chains, of three links each, to hooks some distance apart on the bottom sill of the damaged car, and then inserting the end links of the chains, placed one upon the other, in the sound drawhead of the car to which the coupling is to be made. There they are fastened with a pin, as in ordinary coupling.

This mode of coupling is as safe as the ordinary one-link coupling for carrying cars forward, but is more dangerous to make if made while the cars are in motion. A rule, however, of the company expressly forbids employees entering between cars when in motion to uncouple them, and the same rule, in view of the evidence before us, undoubtedly applies to the coupling of cars where the three-link coupling is made. Its language is as follows: "Entering between cars when in motion to uncouple them, and *all such imprudences*, are dangerous and in violation of the rules of this company." A printed copy of the rules, of which this was one, was furnished to the plaintiff, and receipted for by him, more than a month before the accident occurred.

The evidence does not show that the plaintiff knew, or with the exercise of reasonable diligence might have known, of the condition of the defective car before it reached Hanover Junction, where the accident occurred. Several of the defendant's witnesses say they are of the impression that they previously called his attention to it, but he himself testifies positively to the contrary.

The accident occurred in this way: The train upon which the plaintiff was employed was divided into three sections just before reaching Hanover Junction, on a down grade.

·The first section remained attached to the engine, and was carried down to the junction. The second, or middle section, followed a short distance behind, and, when it reached the junction, was switched off on a side track, and was there stopped. The third, or rear section, was then brought down, moving slowly. As it approached the first section, standing on the main track, the plaintiff went to the rear end of the first section to make the coupling between the two sections. There he took position, standing with one foot between the rails, the other outside, with his right hand resting on the rear sill of the rear car. He stood in this position for several minutes until the arrival of the third section, at the head of which was the damaged car, with the two chains hanging from the hooks of its front sill, to which they were attached. The track at this point is straight for a mile or more in either direction, thus giving the plaintiff ample opportunity to have observed the defective condition of the approaching car. He testifies that he did not, in fact, observe its condition until the car was within four feet of where he stood—too late, he says, for him to have left the track with safety. But upon this point the evidence is conflicting.

A rule of the company provides that " in coupling cars, a stick should always be used," when possible, which materially lessens the danger of coupling. Nevertheless, the plaintiff undertook to make the coupling, not only without the aid of a stick, but with his left hand only, and in the attempt to do so, his hand was caught and crushed between the couplings of the cars.

The witness Michie, who was the conductor of the train, testifies that as the plaintiff was going up the track to make the coupling, he warned him, when within five or six steps of him, to " be particular," saying· at the same time that the coupling was a dangerous one to make. He also testifies that he has been in the employ of the company for a

number of years as a freight conductor, and has never seen or known of a brakeman making, or attempting to make, a three-link coupling when the cars were in motion.

The witness Cosby testifies that while the rear section of the train was slowly approaching the first section, which was stationary on the main track, and had nearly reached it, he called the plaintiff's attention to the coupling of the flat car, and cautioned him not to go between the cars. The witness was a brakeman on the rear section, and was standing, when he spoke to the plaintiff, on top of one of the moving cars. He says he spoke loud enough for the plaintiff to have heard him, though he made no reply.

The plaintiff, however, testifies that he did not hear the warnings either of Michie or Cosby. And Dr. Anderson, who happened to be standing near by, and who went to the plaintiff's assistance when the accident occurred, testifies that they were unheard by him. But several witnesses, who were in no better position for hearing, swear positively that they distinctly heard the remarks of both Michie and Cosby.

At all events, the evidence shows that the dangerous condition of the coupling was obvious, and that the plaintiff, in violation of the rules of the company, voluntarily put himself in a position of danger, in consequence of which he was injured. Under these circumstances, in the eye of the law, he was the author of his own misfortune; that is to say, his negligence, or, what is the same thing, his want of ordinary care and caution, was the proximate cause of the injury complained of. The action is, therefore, not maintainable; for, as was forcibly said by Judge Cooley, in *Mich. Cent. R. R. Co.* v. *Smithson*, 45 Mich. 212: "The best notice is that which a man must of necessity see, and which cannot confuse or mislead him; he needs no printed placard to announce a precipice when he stands before it." And by Mr. Justice Miller, in *Cunningham* v. *Chicago, M.*

*& St. P. R. Co.,* 5 McCrary, 465 : " A man has no right to thrust himself forward into a dangerous position, and say, ' If I am hurt, I shall go to the hospital and be taken care of and recover damages.' He has got to take care of himself," etc.

The law undoubtedly imposes upon a railroad company the duty to observe due care in selecting competent servants, and in supplying and maintaining suitable and safe machinery, and a safe track. *Balt. and Ohio R. R. Co.* v. *McKenzie,* 81 Va. 71 ; *Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S. 642. It is not, however, the insurer of the safety of its employees. Its duty to them is discharged by the exercise of ordinary care ; and by ordinary care is meant " such watchfulness, caution and foresight as, under all the circumstances of the particular service, a corporation controlled by careful, prudent officers ought to exercise." *Wabash Railway Co.* v. *McDaniels,* 107 U. S. 454. Hence, it is not required to change its machinery in order to apply every new invention or supposed improvement in appliance, and it may even have in use a machine or appliance for its operation, shown to be less safe than another in use, without being liable to its employees for the non-adoption of the improvement, provided that the employee be not deceived as to the degree of danger that he incurs. Whart. Neg., sec. 213 ; 2 Thomp. Neg. 1019, sec. 24 (2) ; *Hough* v. *Railway Co.,* 100 U. S. 213 ; *Lovejoy* v. *Boston &c. R. R. Co.,* 125 Mass. 79 ; *Mich. Cent. R. R. Co.* v. *Smithson, supra.*

There are also certain correlative duties on the part of the employee to the company. Of these one is the duty of the employee to be reasonably observant of the machinery he operates, and to report any defects he may discover therein to the company. Another is to exercise ordinary care to avoid injuries to himself ; for the company is under no greater obligation to care for his safety than

he himself is. He must also obey the rules of the company prescribed for his safety, and which are brought to his knowledge. And he must inform himself, as far as he reasonably can, respecting the dangers as well as the duties incident to the service upon which he enters. It has accordingly been held in numerous cases, and the principle is elementary, that where the employee's willful disobedience of the company's rules is the proximate cause of the injury complained of, no recovery can be had of the company. And, in general, any negligence of the employee, amounting to the want of ordinary care, which is the proximate cause of the injury, will defeat an action against the company. *Clark's Adm'r* v. *Richmond & Danville R. R. Co.*, 78 Va. 709; *Sheeler's Adm'r* v. *Ches. and Ohio R. R. Co.*, 81 Va. 188; *M. & C. R. R. Co.* v. *Thomas*, 51 Miss. 637; *Shanny* v. *Androscoggin Mills*, 66 Me. 420; *Muldowney* v. *Ill. Cent. R. Co.*, 39 Iowa 615; *Lockwood* v. *Chicago, &c., R. R. Co.*, 55 Wis. 50; *Toledo, &c., R. Co.* v. *Ashbury*, 84 Ill. 429; *Hathoway* v. *Mich. Cent. R. R. Co.*, 51 Mich. 253; *Railroad Co.* v. *Jones*, 95 U. S. 439; *Tuttle* v. *Milwaukee Railway Co.*, 122 Id. 189.

This is decisive of the case before us. It is proper, however, to say that the evidence does not establish negligence on the part of the company. If the rules of the company are observed, the risks and perils of the service are not increased by the use of the three-link coupling; and if they were, in view of the frequency with which such couplings, in emergencies, are made, the danger incident to their use may well be considered as one of the ordinary perils, the risk of which, by his contract of service, the plaintiff assumed. He certainly had ample means of knowing that such couplings were often made by the company, and he is, therefore, affected with notice of the fact. It was his duty to have known it, if he did not; and the rule is well settled, that where an employee has notice of extra

hazards in the line of his employment, and continues in the service, without any promise on the part of the master to do any act to render the same less hazardous, it will be at his own peril; for the law presumes that he intended to assume them, otherwise he would have quit the service. *Clark's Adm'r* v. *Richmond & Danville R. R. Co.*, 78 Va. 709; *Stafford* v. *Chicago, &c., R. R. Co.*, 114 Ill. 244; *Hough* v. *Railway Co.*, 100 U. S. 213; *Tuttle* v. *Milwaukee Railway Co.*, 122 Id. 189.

For these reasons, we are of opinion that the circuit court did not err in setting aside the verdict of the jury and granting a new trial; nor afterwards, in giving final judgment for the defendant. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.