## NORFOLK & W. R. CO.

*v.*

### JACKSON'S ADM'R.

*(Supreme Court of Appeals of Virginia, May 3, 1888.)*

[6 S. E. Rep. 220.]

**Master and Servant—Defective Appliances—Sufficiency of Evidence.***

Evidence that the "push-pole" furnished by defendant railroad for the purpose of pushing cars upon a track running parallel with the engine, while it should have been sound and strong, was in reality cross-grained and defective; that the tender lacked the usual socket in which to place the end of the pole for operation; that the pole slipped, broke, and that the deceased involuntarily grasped the pole, and was thrown in front of the advancing tender, and killed, sustains a judgment for plaintiff asking damages for negligence.

**Same—Negligence of Master—Pleading.**

A demurrer to a declaration in an action against a railroad which alleges that the accident at which plaintiff's intestate was killed occurred "at or near" Wilson's depot, and that the locomotive and tender, "or one of them," ran against the deceased, and which, while distinctly alleging negligence, and that the company did not provide safe appliances, does not allege that it did not use "due, reasonable, and ordinary care to provide proper appliances" is properly overruled.

Fauntleroy, J., dissenting.

Error to circuit court, Dinwiddie county.

*G. S. Bernard, R. H. Jones* and *W. J. Robertson,* for plaintiff in error.

*W. H. Mann* and *Alex. Hamilton,* for defendant in error.

*See foot-note to R. & D. R. R. Co. *v.* Anderson, 31 Gratt. 812 (Va. Rep. Anno.).

Lacy, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Dinwiddie county, rendered at the April term, 1885. The action was trespass on the case for the killing of Washington Jackson, against the plaintiff in error, the Norfolk & Western Railroad Company, brought by the defendant in error, J. P. Robertson, personal representative of said Jackson, who was a brakeman on the said road and was killed while engaged in shifting cars by the use of what is called a "push-pole." The deceased was furnished by the railroad company with a pole, which was carried along with the engine, to place against the car to be moved on the side track, while the other end was to be held up by him, so as to be pushed by the tender of the on-coming engine, which came along slowly on a signal from him, when the push-pole came in contact with the tender, the engine moving, tender in front, the pole fastened somewhat by the contact, but slipped, and caught on the framing of the tender, and broke, and the tender, still moving, passed over the body of the deceased, who was thrown down in its front by the jerk of the push-pole as it gave way.

At the trial the declaration was demurred to, but the demurrer was overruled, and the defendant company excepted. The demurrer was on the ground that the accident was stated to have happened at or near Wilson's depot, and that the locomotive and tender, or one of them, ran against the deceased, and that the first count is faulty for duplicity in pleading ; that while the declaration charged that the defendant company did not provide suitable, convenient, and safe appliances, for his use, it failed to allege that the defendant company did not use "due, reasonable, and ordinary care" to provide proper machinery, etc. The charge of negligence in the declaration is distinctly made, and the declaration is without fault or imperfection in any respect, and the demurrer was properly overruled.

It is well settled that it is the duty of the railroad company, using the dangerous agency of steam, to exercise all reasonable care to provide and maintain safe, sound, and suitable machinery, roadway, structures, and instrumentalities ; and the employee has the right to presume that the company has discharged these duties.    His contract with the company is based on the duty and the implied understanding of the company to provide safe and adequate machinery, competent and vigilant agents.    Clark's Adm'r v. Railroad Co., 78 Va. 717 ; Moon's Adm'r v. Railroad Co., Id. 752 ; Railroad Co. v. McKenzie, 81 Va. 71 ; Hough v. Railroad Co., 100 U. S. 217 ; Railroad Co. v. McDaniels, 107 U. S. 459, 2 Sup. Ct. Rep. 935 ; Railroad Co. v. Ross, 112 U. S. 383, 5 Sup. Ct. Rep. 184 ; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. Rep. 590.    Applying these principles, which are well settled and familiar, we find that in this case the evidence discloses that the pieces of timber, once used for this purpose of pushing from one track across to another, had been supplanted by a push-pole provided by the company, and carried along with their other implements and utensils ; that they were required to be of good, strong, and straight timber,—sometimes being required to put in motion . cars weighing 60,000 pounds ; and, to keep them from slipping under this enormous pressure, iron cups or sockets were screwed onto the engine or cars to receive them, the pressure being never direct, but always at an angle ; while in this case the wood used to make the push-pole in question was cross-grained and wind-shriveled and knotty, and close to a knot a hole was bored, and a pin put through, and a cuff put in.    The material was unsuitable ; and, by the exercise of ordinary care on the part of the company's agent, it would have been rejected ; and the manipulation of it, stated above, was negligent ; and the tender was not provided with any socket or other appliance to hold the pole in

place, and by this neglect the pole slipped, and caused the accident.

It is insisted that the deceased contributed to his own injury, by holding onto the push-pole after it began to slip ; but this was involuntary and unavoidable, and the evidence shows that the deceased, who was an old hand and very experienced in the business, never lost his head at all, but made most remarkable and almost successful efforts to retrieve the accident and save himself. The jerk upon him when the pole broke was so sudden and violent that he could not recover himself. I think it is clear that the accident was caused by the two concurring acts of negligence of the company—First, in providing an unsuitable and insufficient push-pole ; and, secondly, in failing to provide a socket or some suitable receptacle for the end of the push-pole ; and that the deceased was thus thrown into a position from which he was unable to extricate himself by any diligence within his power ; and that there was no error in the judgment of the circuit court in this case, and the same must be affirmed.

RICHARDSON, J., absent.

FAUNTLEROY, J. (dissenting). I dissent from the opinion of the majority of the court in this case. The action is trespass on the case, to recover damages for the alleged negligent killing of the said decedent, Washington Jackson, while engaged as a brakeman in the employ of the said Norfolk & Western Railroad Company, at Wilson's depot of said company, on the 31st day of January, 1885, in holding and adjusting to its proper use a certain implement used by railroad companies, called a "push-pole." The jury rendered a verdict for the plaintiff, and assessed his damages at $5,000. There was a demurrer to the declaration, and to each count thereof, which the court overruled. The plaintiff asked for sundry instructions, which the court gave to the jury ; and the defendant asked for instructions, which the court refused,

but gave in lieu thereof instructions of its own.  To the action of the court in overruling the demurrer as aforesaid, and in giving the instructions asked for by the plaintiff, and in refusing to give the instructions asked for by the defendant, but giving its own instructions in lieu thereof, the defendant excepted, and the said rulings of the court are assigned as errors, specifically set forth in the petition, and argued at length and in detail by the counsel in their respective briefs and at bar.  The defendant moved the court to set aside the verdict and grant a new trial, upon the ground (1) that the court had erred in giving the instructions given by the court, and refusing to give, without modification, the instructions asked for by the defendant ; (2) because the verdict is contrary to the law and the evidence ; (3) because the damages given by the jury are excessive,—which said motion the court overruled, and entered judgment upon the verdict.  Whereupon the defendant excepted to the ruling of the court, and petitioned for and obtained this writ of error to the said judgment.

In reviewing the records of this case, I do not deem it necessary to consider or pass upon the numerous errors assigned in the petition of the plaintiff in error, in the action of the trial court in overruling the demurrer to the declaration, and in giving and refusing instructions, because, upon the evidence as certified by the court, even the evidence of the plaintiff (the defendant in error), taken alone, and wholly excluding that of the plaintiff in error, I am of opinion that the verdict of the jury is plainly wrong, and the court erred in refusing to set it aside on the ground that it is contrary to the law and the evidence.  Upon the defendant in error's own evidence as given by his own witnesses, allowing it full force and credit, he is not entitled to a verdict, because it discloses a clear case of want of ordinary care and of contributory negligence on the part of the defendant in error but for which the injury would not have occurred

to him.   The defendant in error's own witness Henry Hawks, an intelligent and reliable man, who had been an employee on the road for 17 years, among other things said : "My occupation is to pump water, etc., at Wilson's depot.   I saw the accident at Wilson's depot.   Jackson had hold of one end of the pole ; Romeo Thornton the other.   Thornton placed his end against the coal car,  Jackson held the other end for the car to come against.   Mr. Smith came slowly back against the pole from a slow motion to a fast walk.   The pole slipped in from the corner, and snatched Jackson on the track.   The first rear wheel of the tender caught and killed him.   *   *   *   It was customary with the hands using these poles, after adjusting them to tender and cars, to turn them loose : but, when the accident occurred, Jackson held onto the push-pole.   When he put the pole there, he said, 'All right,' but didn't turn it loose. It is customary for the hands, when the pressure gets to the right point, to turn the pole loose.   In this case the engine started at a very slow motion at first, and just as it got to a fast walk this accident occurred.   The fireman seemed to handle the engine with as much care as any one I ever saw. He was a good fireman.   By the 'right point,' used in the direct examination, I mean, when the pole is made tight between the coal car and the engine, then it is customary to turn the pole loose.   I meant tender, not engine.   On the morning of the accident, if Jackson had turned the pole loose as soon as it got tight, he would not have been hurt. *   *   *   It is the custom of brakemen on our road to use push-poles in shifting the cars on the track.   'All right' from the man using the push-pole was the signal for the engineer or driver of the engine to come back.   It meant he had put the push-pole in proper position.   It was the universal custom of the employees on the road when the push-pole used by them was placed in position, to say, 'All right,' to the engine driver, and then to turn the push-pole

loose ; and, had he turned the pole loose, the accident would not have occurred.'' These are the clear, uncontroverted statements of the plaintiff in error's own main witness,— testimony with which there is not only no other testimony in conflict, but which is corroborated by other testimony in the case. The defendant in error's case, as made out by his own testimony, should have put him out of court by a demurrer to the evidence. His chief witness, Hawks, proves distinctly and unqualifiedly that his decedent, the injured brakeman, who had been employed on this road for 20 or 25 years, carelessly held onto the push-pole without any necessity for doing so, and contrary to the universal custom and caution of brakemen in the use of the push-pole, and thereby suffered an injury which would not have befallen him had he loosed the push-pole from his grasp as soon as it was properly put in position, and become tight, as announced by his own signal to the engine driver, ''All right.'' The fact stands out in bold prominence that the injured brakeman, Jackson, held onto the push-pole when and after he should have released it, according to his own announcement, and thereby was the author of his own misfortune, in omitting to use the ordinary care which the law required of him to use. See Railroad Co. v. Jones, 95 U. S. 439; Railroad Co. v. Anderson's Adm'r, 31 Gratt. 812 ; Dun v. Railroad Co., 78 Va. 645; Railroad Co. v. Ferguson, 79 Va. 241; and numerous late decisions of this court not yet reported.

For the foregoing reasons, I am of opinion that the verdict of the jury should have been set aside, and that the judgment of the circuit court complained of is erroneous, and ought to be reversed.