# Richmond.

## N. & W. R. R. Co. v. Jackson's Adm'r.

November 15th, 1888.

EMPLOYER AND EMPLOYEE — *Employer's Negligence—Declaration—Demurrer.*—In action against employer for negligence, causing death of plaintiff's intestate whilst in the discharge of the duty of his employment, a count averring that defendant failed to provide " suitable, convenient and safe appliances," that is to say, proper push-poles and sockets for same, " by reason of which said careless acts of the defendant, the deceased was injured," is demurrable for that it does not aver that defendant failed to exercise ordinary care in providing suitable and safe appliances for the business, and that the alleged defects in the push-pole were, or ought to have been, known to defendant, and that deceased did not know of them, and was himself without fault. So likewise is a count averring that said push-pole was not made of " strong and suitable material," and failing to aver that its defects were, or ought to, have have been, known to defendant. So likewise is a count averring that it was the duty of defendant to have furnished a push-pole " constructed in the best and safest manner and of the best material ;" and also a count averring that defendant is liable because of its failure to provide sockets for the tender and car in question ; all for the reasons set forth in the opinion.

Error to judgment of circuit court of Dinwiddie county, rendered April 10th, 1886, in the action of trespass on the case for damages for the negligent killing of the plaintiff's intestate by the defendant, in which action J. P. Robertson, administrator of Washington Jackson, deceased, is plaintiff, and the Norfolk and Western Railroad Company is defendant. There was a demurrer to the declaration and to each count thereof, which was overruled. The verdict being for the plaintiff for $5,000 dam-

ages, the defendant moved that it be set aside and a new trial granted. This motion being overruled, the defendant excepted; and the evidence being certified, brought the case here on writ of error and *supersedeas.* Opinion states the case.

*George S. Bernard, Robert H. Jones, Jr.,* and *Wm. J. Robertson,* for the plaintiff in error.

*W. H. Mann,* and *Donnan & Hamilton,* for the defendant in error.

LEWIS, P.

This was an action in the circuit court of Dinwiddie county to recover damages for the alleged negligent killing of the plaintiff's intestate, who, when he was killed, was in the employ of the defendant company, the plaintiff in error here, as a brakeman on a freight train. There was a demurrer to the declaration and to each count thereof, but the demurrer was overruled, and the jury having returned a verdict for the plaintiff for $5,000 damages, the court gave judgment on the verdict, whereupon the defendant obtained a writ of error and *supersedeas.*

The case was first argued here before a court composed of four judges only, and the opinion of the court, affirming the judgment of the court below, may be found in 6 S. E. Rep. 220. Subsequently a rehearing of the case was granted, after which an argument was had, before a full court, upon all the points arising in the case. The court has carefully considered the case and the arguments of counsel, and while a majority of the judges are of opinion that upon one point arising upon the demurrer to the declaration the judgment must be reversed, there is a diversity of views upon other points upon which they have been unable to agree. I will, therefore, give the reasons upon which my own conclusions are based.

It is admitted that the general and well established rule is, that he who enters the service of another for the performance of specified duties for compensation, takes upon himself the natural and ordinary risks incident to the performance of such duties. The law presumes that the employee voluntarily assumes these risks when he enters the service, and that his compensation is adjusted accordingly. Hence, "he cannot, in reason, complain if he suffers from a risk which he has voluntarily assumed, and for the assumption of which he is paid." *Chicago, &c., R. R. Co.* v. *Ross,* 112 U. S. 377.

Nor, on the other hand, is it disputed that the rule does not relieve the employer of the obligation to exercise ordinary care in supplying and maintaining suitable and safe instrumentalities for the performance of the work required. The employee has the right to count on this duty, and he is not required to assume the risks of the negligence of the employer, or, what is the same thing, of those who stand in his place and represent him. The contract of service implies, in the absence of a stipulation to the contrary, that the employer will make adequate provision that no danger, other than the perils naturally incident to the business, shall enure to the employee in the course of the employment; and if he fails in the performance of his duty in this particular, he is as liable to the employee as he would be to a stranger.

But the obligation extends no further than to exercise ordinary care. Wood, Master & S., sec. 345; *Improvement Co.* v. *Smith's Adm'r, ante,* p. 306. The employer is not the guarantor of the employee's safety, and hence he is not bound, at his peril, to provide only the best and safest instrumentalities, and to use the best methods for their operation; nor does he impliedly warrant the fitness and soundness of his machinery and appliances. 2 Rorer, R. R., 1212, note. If, in the exercise of ordinary care, he furnishes such as are reasonably safe and adequate, and keeps them so, that is all the employee can expect. The latter, likewise, must use ordinary care to avoid injuries to him-

self, and to entitle him to recover for defects in the appliances of the business, he is, ordinarily, required to show—*First*, that the appliance in question was defective ; *secondly*, that the employer knew, or ought to have known, of the defect; and, *thirdly*, that the employee did not know of it, and that the injury complained of resulted in spite of ordinary care on his part. And the reason why he must establish the last, as well as the first two, of these propositions is, that the burden is on him to show that his case comes within an exception to the general rule, above mentioned; that is to say, that " the injury did not arise from an obvious defect in the instrumentalities of the business, or from a hazard incident to the business, but from a cause  *   *  which strips his act of the imputation of negligence, and overcomes the presumption that he voluntarily took the risk upon himself." Wood, Master & S., secs. 382, 414.

The employer, however, is not bound to adopt every new improvement in appliance, nor is he liable to the employee for an injury on the ground merely that the injury would not have resulted if such new improvements had been adopted, provided the employee be not deceived as to the degree of danger that he incurs. 3 Wood, Ry. Law, sec. 378 ; *Darracott* v. *Ches. & Ohio R. R. Co.*, 83 Va. 288.

It is also well settled that if the employee chooses to accept an employment which requires him to operate machinery defective from its construction, or from the want of repair, and with knowledge of the facts enters the service, he cannot hold the employer liable for an injury within the scope of the danger which both the contracting parties contemplated as incident to the employment. And so, also, where the employee, after he enters the service, has notice of defects in the machinery he is required to operate, and thereafter continues in the service without any promise on the part of the employer to render the same less hazardous, he assumes these extra risks, and must bear the consequences. And the law presumes notice of those perils which are open and obvious, and which the employee has had

the opportunity to ascertain.    Whart. Neg., sec. 206 ; *Stafford* v. *Chicago, &c., R. R. Co.,* 114 Ill. 244.

These principles are well illustrated by the case of *Dynen* v. *Leach,* 40 Eng. Law & Eq. 491.    That was an action, brought under Lord Campbell's act, to recover damages for the alleged negligent killing of the plaintiff's intestate.    The defendant was a sugar refiner, and had employed the deceased as a laborer. It was a part of the latter's duty to fill sugar-moulds, and to hoist them up to higher floors in the warehouse by means of machinery.    The usual mode of attaching the moulds to the machine was by placing them in a sort of net-bag, which effectually prevented any accident; and this was the mode adopted by the defendant until, from motives of economy, he substituted a kind of clip, which laid hold of the rim of the mould.    The deceased, on the occasion in question, had himself filled the mould, and fastened it to the clip, but when it was being raised, the clip, by some jerk, slipped off the mould, which fell on his head and killed him.    Upon these facts the plaintiff was non-suited, and this ruling was unanimously affirmed by the court of exchequer.

Pollock, C. B., said: "A servant cannot continue to use a machine he knows to be dangerous at the risk of his employer."

Bramwell, B., was of the same opinion.    He said: "There is nothing legally wrongful in the use by an employer of works or machinery more or less dangerous to his workman, or less safe than others that might be adopted.    It may be inhuman so to carry on his works as to expose his workmen to peril of their lives, but it does not create a right of action for an injury which it may occasion when, as in this case, the workman has known all the facts, and is as well acquainted as the master with the nature of the machinery, and voluntarily uses it."

Channel, B., concurred.    He said: "If I were to speculate on the cause of the accident, I should be disposed to think that it was the careless fixing of the clip by the deceased himself.    But we cannot speculate on that point; and I rest my judgment on

the ground that the deceased himself continued in the employ of the defendant, and in the use of the clip, with full knowledge of all the circumstances, so that he directly contributed to the accident."

In the recent case of *Tuttle* v. *Milwaukee Railway*, 122 U. S. 189, the rule is very clearly announced by the supreme court of the United States. That, too, was an action for alleged negligence, resulting in the death of the plaintiff's intestate, who was a brakeman in the defendant's employ, and who was killed while coupling cars on a siding in the yards of the defendant company. The siding was a double-curve track, containing a very sharp curve, in consequence of which the draw-heads of the cars failed to meet, and passed each other, thus coming so close together that the deceased was crushed to death. The charge of negligence was, that the cars were unsafe and negligently constructed, in not being provided with bumpers or other means to prevent their coming together in case the draw-heads passed each other, and that the curve was unskilfully and negligently constructed with a curve so sharp as to permit the draw-heads of the cars to pass each other, whereby the deceased was killed, without fault on his part.

It was held, however, that the action was not maintainable. "The deceased," said the court, "entered into the employment of the defendant as a brakeman in the yard in question, with a full knowledge (actual or presumed) of all these things—the form of the side tracks, the construction of the cars, and the hazards incident to the service. Of one of these hazards he was unfortunately the victim. The only conclusion to be reached from these undoubted facts is, that he assumed the risks of the business, and his representative has no recourse for damages against the company."

The rule, it was said, which exempts the master from liability to the servant in such a case, is founded not only upon an implied contract between the parties that the servant will assume the hazards usually incident to the service, and such, also, as

are open and visible, but upon grounds of public policy as well, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business, but it would be an encouragement to the servant to omit that diligence and caution which, by the contract of service, he is bound to exercise, and which affords a better security against injury to himself than any recourse to the master for damages could afford.

In *Mich. Central R. R. Co.* v. *Smithson*, 45 Mich. 212—a leading case in this country—Judge Cooley, in delivering the opinion of the court, said: "No railroad company, and no manufacturing or business establishment of any kind, is bound at its peril to make use only of the best implements, the best machinery and the safest methods. The State does not require it, and could not require it without keeping such minute and constant supervision of private affairs, and interfering with such frequency as under all circumstances would be irritating and damaging, and in many cases would become intolerable. In the main, the State must leave every man to manage his own business in his own way. If his way is not the best, but nevertheless others, with a full knowledge of what his way is, see fit to co-operate with him in it, the State cannot interfere to prevent, nor punish him in damages when the risks his servants voluntarily assume are followed by injuries."

The complaint in that case was, that the injuries suffered by the plaintiff, who was a brakeman in the defendant's employ, were caused by the defective construction of the car in question, which, moreover, was what is called "a foreign car," and of all which the plaintiff had no notice. But the court said that the dangerous character of the car was obvious, and, therefore, that its visible presence was the best notice to warn him of the danger.

To the same effect are the decisions of this court. Thus, in *Clark's Adm'r* v. *R. & D. R. R. Co.*, 78 Va. 709, it was held that the action could not be maintained, because, apart from the

legal effect of the contributory negligence of the plaintiff's in-
testate, who was a brakeman in the defendant's employ, the
risk of his head coming in collision with the "over-head bridge,"
which caused his death, was one of the perils "incident to the
employment, in contemplation at the time of the contract (of
service), and arising from causes open and obvious, the dan-
gerous character of which the deceased had an opportunity to
ascertain, and the risk of which he assumed." See also *Sheeler's
Adm'r* v. *Ches. & Ohio R. R. Co.,* 81 Va. 188, 201; *Darracott*
v. *Ches. & Ohio R. R. Co.,* 83 Va. 288; *Illuminating Co.* v. *Patte-
son's Adm'x,* 84 Va. 747. And decisions to the same effect from
other courts of the highest character are almost without number,
as a reference to any recent work on the subject will show.

It is very clear, therefore, to my mind that the charge of neg-
ligence against the company, so far, at least, as it is based upon
the ground that the tender and car in question were not pro-
vided with sockets, as they are called, cannot be sustained.
These sockets, when used, are fastened to the corners of the cars
and tenders. They are made of iron and saucer-shaped, into
which the ends of the push pole are placed to prevent the pole
from slipping. The push-pole is a wooden implement, about
eleven feet in length, and is used in pushing cars from the side-
track, by one end of it being adjusted against the tender of the
engine on the main track or on a parallel track, and the other
end of it being placed against the car on the side-track to be
moved. When the accident occurred the deceased, in obedience
to orders, had adjusted one end of the pole against the tender,
the other end being placed against the car on the side track by
a fellow-servant. As the engine backed to push the car out, the
end of the pole on the tender slipped, which threw the deceased
under the wheels of the tender and killed him. The plaintiff
contends that the death of the deceased was caused by the neg-
ligence of the company, and that it was negligence on the part
of the latter not to have provided the tender and car with
sockets.

The latter proposition, however, is disproved by the evidence for the plaintiff himself. It appears that the deceased was an experienced brakeman, having been employed on the road, in that capacity, for a number of years; and the undisputed fact is, that these sockets are a new invention—at least, "they are new in the south." Only a few of them have been put on the cars of the defendant company, and they are not much in use on the other roads. The presumption is, that the deceased knew they were not used by the company—if, indeed, he had ever heard of such an appliance at all—when he entered its service, and that the parties contracted accordingly. At all events, the absence of a socket attachment to the tender, when the accident occurred, was a fact obvious to the deceased, and, as Judge Cooley said in *Mich. Central R. R. Co.* v. *Smithson,* a man "needs no printed placard to announce a precipice when he stands before it."

It is also clear, I think, in the light of the principles already indicated, that the demurrer to the declaration ought to have been sustained, or, at least, to the first, third, fourth, and fifth counts thereof. The first count avers, in general terms, that the defendant failed to provide "suitable, convenient, and safe appliances"; that is to say, a proper push-pole and sockets for the same, "by reason of which said careless acts of the defendant" the deceased was injured. This count is open to several objections. It does not aver that the defendant failed to exercise ordinary care in providing and maintaining suitable and safe machinery and appliances for the business, nor does it aver that the alleged defects in the push-pole were known to the defendant, or ought to have been, or that the deceased did not know of them, and was himself without fault. And as these facts must be proved by the plaintiff, to entitle him to recover, they must be averred in the declaration, according to the familiar rule of pleading, which requires that the declaration must state enough to show, if true and not avoided by the plea, that the defendant is necessarily liable to the plaintiff's demand. *Dykes*

v. *Woodhouse's Adm'r*, 3 Rand. 287, 300; *Mad River, &c., R. R. Co.* v. *Barber*, 5 Ohio St. 541, 568.

The general rule, undoubtedly, is, that a plaintiff need not aver and prove that he was not guilty of contributory negligence, but where the defence of contributory negligence is relied on, it must be proved by the defendant. In a case like the present, however, the rule is different; and the reason, as already explained, is, that to entitle the plaintiff to recover, he must prove (and therefore he must aver) that the injury complained of did not result from the ordinary hazards of the business, which he is presumed to have voluntarily assumed, nor from his own fault, but from a cause which brings the case within the exception to the general rule which exempts the employer from liability to the employee for injuries received by the latter in the course of the employment. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282; Wood, Master & S. (2d ed.), sec. 382; *Mad River, &c., R. R. Co.* v. *Barber, supra.*

The second count avers, in substance, that the accident was caused by the gross negligence of the defendant's agents in the management of the engine and tender under the orders of the conductor of the train, who was present as the representative of the company, and for which the latter is liable. This count seems to have been abandoned at the trial; and whether it be good or not is immaterial, since the verdict does not ascertain upon which of the counts it was rendered, and *non constat* that it was not founded upon one or more of the faulty counts. 4 Min. Insts. 736.

The third count is faulty, because while it avers that the push-pole was not made of "strong and suitable material," it does not aver that its alleged defects were known to the defendant, or ought to have been.

The fourth count is faulty, because it avers that the defendant was bound to have furnished a push pole "constructed in the best and safest manner, and of the best material," which, as we have seen, it was not the duty of the defendant to do, but only

*to use ordinary care* to provide safe and suitable materials and appliances for the business.　Shear. & R. Neg., sec. 92.

The fifth and last count, which charges that the defendant is liable because of its failure to provide sockets for the tender and car in question, is bad for reasons already stated, which need not be repeated here.

I think, therefore, the judgment should be reversed; and as the case must go back for a new trial, I express no opinion as to whether the evidence shows that the push-pole was defective, and sworn by the defendant to be so, or whether the deceased was guilty of such contributory negligence as to defeat the action

FAUNTLEROY, J., concurred in the opinion.

HINTON, J., was of opinion that there was error in overruling the demurrer.

LACY, J., and RICHARDSON, J., dissented.

JUDGMENT REVERSED.