# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## So. W. Improvement Co. v. Smith's Adm'r.

### August 23d, 1888.

1. NEGLIGENT INJURIES—*Liability—Declaration.*—Employer is bound to use ordinary care in selecting competent servants and suitable and safe appliances for the work to be performed, and in providing generally for the safety of his servant, having regard to the character of the work, as what would be ordinary care in one case may be gross negligence in another. *Darracott* v. *C. &. O. R. R. Co.*, 83 Va. 288. And a declaration which, fairly construed, charges that employer was bound to use such ordinary care, is sufficient.

2. APPELLATE COURT—*Evidence certified—Motion to set aside verdict—Rule of practice.*—Where motion to set aside verdict as contrary to evidence is overruled, the mover excepts and evidence is certified, this court will consider the case as if it was a demurrer to evidence by the exceptor under ₴ 3484, Code 1887, though lower court rendered its judgment before that Code took effect, because that section took away no vested right, and merely prescribed a rule of practice.

3. NEGLIGENT INJURIES—*Contributory negligence—Case at bar.*—Where proximate cause of accident, whereby intestate was killed, was want of sufficient brakes and "spraggers" to "chock" the cars used by employer, though intestate, a boy under fourteen, being placed by employer's negligence where he must adopt a perilous alternative, or where, terrified by an emergency created by employer's negligence, intestate acted recklessly and consequently suffered;

HELD:

 Such reckless action is not contributory negligence, as persons in great peril are not required to exercise the presence of mind required of prudent men under ordinary circumstances. This principle is peculiarly applicable to case at bar.

4. APPELLATE COURT—*Setting verdict aside.*—Where the jury and the judge below concur as to the weight and influence of the evidence, it is an

abuse of appellate power in this court to set aside the verdict, because, from the evidence before it as written down, the judges of this court . could not have concurred in the verdict. *Read's Case*, 22 Gratt. 924.

Error to judgment of circuit court of Tazewell county, rendered November 26th, 1887, in an action of trespass on the case wherein Samson Smith, administrator of Wm. H. Smith, deceased, was plaintiff, and the South West Improvement Company was defendant. This action was for the recovery of damages for the negligent killing of the plaintiff's intestate, a boy under fourteen years of age, by the defendant company, in whose employment he was at the time of the accident. At the trial there was a demurrer to the declaration, which was overruled. The verdict being for $766 damages for the plaintiff, the defendant company moved to set it aside, and for a new trial. This motion was also overruled. And the defendant obtained a writ of error and *supersedeas*. Opinion states the case.

*John H. Fulton*, for the plaintiff in error.

I. The demurrer to the declaration ought to have been sustained. The duty imposed by the law upon the master towards his servant is simply to exercise all *reasonable* care to provide and maintain safe, sound and suitable machinery, etc. Thompson on Neg., Vol. 2, p. 982, sec. 11, and cases there cited; Cooley on Torts, pp. 556–7; 78 Va. p. 717; Same, 752; 81 Va. p. 71; *N. & W. R. R. Co.* v. *Jackson's Adm'r*, S. E. R. June 5, p. 221, and cases there cited.

The declaration in this case undertakes to set out the legal duty imposed upon the master, and, for cause of action and complaint, assigns a disregard of this duty as set out, whereby plaintiff's intestate was killed. If, then, the duty of the defendants' company is erroneously set out, and the cause of action is a violation of this duty erroneously alleged, and none other, it is manifest the demurrer was well taken and ought to have been sustained.

The question is one of construction to be given the language used by the pleader. It seems the plaintiff's counsel is not yet convinced that the legal duty of the master is confined to reasonable care; but, if so, he strives to prove the language used can be so interpreted. This is not enough. The object of pleading is to present a single issue, an issue clearly defined and unmistakable; and if the language is susceptible of two interpretations, it is faulty and misleading.

In this case the duty alleged is to the extent of defendant's ability, by proper care, to provide for the safety of its workmen, and then it is said this duty might have been reasonably performed, but was not. This latter clause is no qualification of the duty alleged, but is simply the pleader's opinion of how easy and light was the performance of the duty imposed.

The same is true of the language used in the second count.

II. The facts and evidence are wholly insufficient to sustain the verdict, and the verdict is contrary to the facts and evidence.

(*a*) Take the facts proved in connection with the plaintiff's evidence, and exclude all the evidence of the defendant, and there is nothing disclosed to support either count of the declaration.

There is shown no negligence of the defendants, either in the selection nor the retention of unskilled officers, agents or servants, nor in the quality nor suitableness of the machinery, cars, structures and equipments.

There is a positive denial and disproof of the allegation that the post of duty of the boy was upon the track. On the contrary, it is shown that his place was one of safety off the track, and that he left his place only upon orders. No such orders are attempted to be shown, and why he was upon the track and remained there is left to conjecture, or, as the plaintiff's counsel say, *inference.*

Inference and presumption in such matters won't do. The party alleging negligence must prove it.

(*b*) Consider the defendant's evidence, so far as it is not con-

Argument—Opinion.

tradicted by the evidence of the plaintiff (new Code, sec. 3484, p. 829), and it discloses the fact that the death of the plaintiff's intestate was occasioned by his own contributory negligence, concurring, perhaps, with that of a fellow-servant.

He was away from his post of duty one hundred yards, contrary to orders and against the remonstrances of his fellows, twice appealed to to return. He starts back. His fellow-servant permits a car to get away. The cars and the boy go down the track together. This is all we know. The irresistible conclusion is that the boy recklessly attempts to get ahead and open his door, and meets his death.

Any view that can be reasonably taken from the evidence fails to disclose any negligence on the part of the defendant through its officers or agents, or defective machinery as the cause of the death complained of, for which it ought to be held liable in damages, but on the contrary it is proved the mine, in all its appointments, is excellent, its officers competent and fit, and its machinery good. This being so, the verdict was manifestly wrong.

*Henry & Graham,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

The first question is, whether the declaration is defective. It alleges in the first count that at the time the accident in question occurred, the defendant company was the owner of certain coal mines, in Tazewell county, which it was engaged in operating, and that William H. Smith, the plaintiff's intestate, an infant of thirteen years and eleven months of age, was an employee of the company; that it was the duty of the company "to use due and proper care for the safety of the said William H. Smith while he was so employed and working in said coal mines, and to the extent of its ability, by due and proper skill and care, to so provide in operating said coal

mines as that the said William H. Smith could safely work therein while in the service of the defendant, and also to the extent of its ability, by due and proper care, foresight, prudence, and caution, to select competent agents to manage, control and operate said coal mines, and to manage and control the machinery and cars which were used in and about said coal mines," etc.

The second and last count alleges that it was the duty of the defendant " to keep the said coal mines and the machinery therein, and its cars used for conveying coal in and about said coal mines, in as good order, safe condition, and under as good control as human care, foresight, and prudence could reasonably provide, and also to use due and proper care and caution in selecting careful and competent agents to operate said coal mines, and to run, manage and control said machinery and the said cars, and to see that the cars were under good and safe control, so far as could be reasonably provided." But that the defendant "did not use such care and caution as aforesaid, and as was required of it, but on the contrary thereof was altogether careless and negligent, in this, to-wit: that by and through its servants and agents it negligently permitted its cars, used in and about its coal mines as aforesaid, to strike and run over the said William H. Smith, whereby he was instantly killed, while in the service of the defendant, and at his post of duty."

There was a demurrer to the declaration, and to each count thereof, but the demurrer was overruled ; and this ruling of the circuit court is assigned as error. It is contended that the de- murrer ought to have been sustained, because the declaration alleges that the defendant was bound to use a degree of care higher than the law requires.

It is not disputed that the defendant was bound to use *ordi- nary* care; that is to say, such care as reasonable and prudent men use, under like circumstances, in selecting competent ser- vants, and in supplying and maintaining suitable and safe

appliances for the work to be performed, and in providing generally for the safety of the servant in the course of the employment—regard being had to the character of the work, and to the difficulties and dangers attending it, for what would be ordinary care in one case may be gross negligence in another. *Darracott* v. *Ches. & Ohio Railroad Co.*, 83 Va. 288, and cases cited.

It is contended that the declaration in the present case goes beyond this, and alleges that the defendant, to the extent of its ability, and as far as human care, foresight and prudence could provide, was bound to care for the safety of its employees, and that it is liable in this action for failing to exercise *such* care. We do not think that, upon a fair construction of the language used, the declaration is open to this objection. The language in the declaration upon which the objection is based must be read in the light of the qualifying words which immediately accompany it; and thus construed, the declaration is unobjectionable, though it is quite true it might have been better expressed. Thus, in the first count, wherein it is alleged that the defendant was bound, to the extent of its ability, to provide for the safety of the plaintiff's intestate, the allegation is qualified by the words, "due and proper care," etc., so as to read, in substance, that it was the duty of the defendant, to the extent of its ability by the use of due and proper care, to provide for the safety of its servants in the course of the employment; thus, in effect, charging no higher degree of care than the law requires.

And so, in the second count, the allegation is, not that the defendant is bound absolutely to keep its cars in as safe condition and under as good control as human care and foresight can possibly provide, but under as good control as human care and foresight can reasonably provide—just as in the concluding part of the count it is alleged that it was the duty of the defendant "to see that the cars were under good and safe control, so far as could be reasonably provided."

This being so, it would be an illiberal and too strict a con-struction to hold that the declaration charges that the defendant was bound to use more than reasonable care; and reasonable care, which is nothing more or less than ordinary care, is required of the employer. Cooley, Torts, 557; *Clark's Adm'r* v. *R. & D. R. R. Co.*, 78 Va. 709; *Wabash Railway Co.* v. *McDaniels,* 107 U. S. 454, 460. In 2 Thomp., Neg., 986-7, a case is cited from the supreme court of Illinois, in which it was held that while railroad companies are not insurers of the safety of their em-ployees, or that their road, appurtenances and instrumentalities are safe and in good condition, yet they are bound to do all that human care, vigilance, and foresight can reasonably do, consistent with the modes of conveyance and the practical opera-tion of the road, to put them in that condition and to keep them so. And the principle equally applies to the present case.

No question is raised in this connection as to the infancy of the plaintiff's intestate, and very properly, because a minor, no less than an adult, takes upon himself the ordinary hazards incident to the service in which he engages, and whether an infant employee who is injured in the service has sufficient understanding to fully appreciate the nature and extent of those hazards, or whether the master has neglected to take due pre-caution to inform him of them, are questions of fact for the jury, and as to which there need be no averment in the declara-tion. 2 Thomp., Neg., 977; Cooley, Torts, 553; *Fisk* v. *Central Pacific Railroad Co.,* 72 Cal. 38; S. C., 1 Am. St. Rep. 22, 28.

The circuit court, therefore, did not err in overruling the demurrer to the declaration; and the next and only other question is, whether there was error in overruling the defen-dant's motion to set aside the verdict, on the ground that the verdict is not supported by the evidence. It is contended that the motion ought to have been granted—*first,* because the evidence fails to establish negligence on the part of the company; and, *secondly,* because it discloses such contributory

negligence on the part of the plaintiff's intestate as to defeat a recovery.

The bill of exceptions embodies a certificate, which is partly a certificate of facts and partly a certificate of evidence. It appears from the certificate of facts that, at the time he was killed, the plaintiff's intestate was employed by the defendant company as a "door boy," whose duty it was to attend and to open and close, when required, certain doors in the coal mines, which were being operated by the defendant. There is what is called an entrance to the mines, which extends northward some distance into the mines, along which a track with rails is laid, over which the coal is conveyed from the mines in cars of about two tons capacity each. A number of chambers open upon this entrance, from which the loaded cars are drawn by mules to the main track on the entrance. As each car is brought out, it is put upon the main track and there stopped. The mules are then unhitched, and the car turned over to an employee called a "spragger," whose duty it is to apply the brakes and to "sprag" it; that is, as an additional precaution to keep the car stationary, to put a block of wood in front of the wheels, or, as it is also called, to "chock" it.

The chambers above mentioned are numbered successively from one to eleven, and to bring the coal from these chambers two mule-drivers are employed, and the custom has been to employ as many spraggers. From chamber No. 11 to the door near the mouth of the mine, called the "intake door," the track is on a down grade. It is the custom, commencing with chamber No. 1, to bring the coal from the chambers in the order of succession, and when a sufficient number of cars (usually twenty-five) have been brought out and stationed on the track, it is the duty of "the train runner" to couple them, and then to take the train down the track and out of the mines—the train, when the brakes are taken off, moving of its own momentum.

The duty of the plaintiff's intestate was to keep closed, until he was ordered to open, four doors in the entrance, namely, a

door at the mouth of each of the chambers, designated, respectively, as Nos. 1, 2 and 3, and also the door across the entrance, or the "intake door." These doors are essential to the proper ventilation and safety of the mines, and are designed, as occasion requires, to admit or exclude the air, which is driven into the mines through the entrances and chambers by means of a large fan run by an engine. They are hung upon hinges, and, at the time the accident complained of occurred, were in good working order. Between the track along the entrance, and the west wall of the entrance, there is only a space of five feet, and in this narrow space, at the "intake door," and inside of and behind the door, the plaintiff's intestate, a boy of thirteen years and eleven months old, was stationed. From this point he went to any of the other three doors above-mentioned, when his duty called him there, and returned after his duty was performed. It was necessary for him, in order to open the doors, to cross the track; so that his position was one not only of responsibility, but of danger. Inside the mines lights, of course, are required to enable persons to see at all, and hence each worker in the mines carries a light fastened into his cap.

When a train has been made up and is ready to move out of the mines, it is the duty of "the train runner" to mount the forward car with a light on his cap, slacken the brakes, and notify the switchman of his readiness to move, who in turn signals the door-keeper to open the door across the entrance, so as to allow the train to pass through and out of the mines.

At the time the accident occurred only one "spragger" was on duty. The other was absent, and the superintendent in charge had been notified of his absence; but his place was not supplied until in the afternoon of that day, and some time after the accident had happened. On the morning of the same day there were brought from chambers 5, 6, 7, and 8 seven loaded cars of coal, which in their order were put upon the main track, "spragged," and left standing there. Soon afterwards, the eighth car was brought out and put upon the track, which

moved down upon the stationary cars in front of it with such force as to set them in motion; the result of which was that the whole train was suddenly and rapidly sent down the grade, breaking through the "intake door," and passing over and instantly killing the plaintiff's intestate, whose mangled body was found under the second car, at or near the door where the train stopped.

These are the principal "facts proved" in the case. In addition to this, however, there is a certificate of evidence, some of which was introduced by the plaintiff and some by the defendant, and as to which we will consider the case as on a demurrer to the evidence by the defendant, the plaintiff in error here; that is to say, the latter must be considered as admitting all that the jury could reasonably infer from the plaintiff's evidence, and as waiving all its own evidence which contradicts the plaintiff's evidence, or the credit of which is impeached, and all inferences from its own evidence which do not necessarily flow from it. *Trout* v. *Va. & Tenn. R. R. Co.,* 23 Gratt. 619; *R. & D. R. R. Co.* v. *Moore's Adm'r,* 78 Va. 93.

This is the rule of decision in the appellate court prescribed by section 3484 of the new Code, and which is applicable to the present case, although the judgment of the lower court was rendered before the Code took effect; for the statute, when so construed, takes away no vested right, but simply prescribes a rule of decision or of practice in the appellate court which it was competent for the court, independently of the statute, to have adopted, to operate retrospectively as well as prospectively, and thereby to have changed the rule which it (not the legislature) had previously adopted in such cases, which required all the parol evidence of the exceptor to be rejected when *the evidence* was certified. No point, however, as to the propriety of applying the statutory rule to the present case is made by the defendant in error, and we will not stop, therefore, to further discuss it. Sedg., Stat. and Const. Law, 163, note.

Indeed, upon the evidence in the record, the application of

the new rule is not less favorable to the defendant in error than that which has heretofore prevailed, since upon a most important point in the case the evidence of the exceptor is extremely favorable for the former. Thus, Peter Curry, the "spragger," who was examined as a witness for the defendant company, and whose duty it was to "sprag" the cars as they were brought from the chambers, testifies that while the brakes on the eighth car, above mentioned, which collided with the train and started it, were good, "some of those on the other cars were not good"— thus establishing negligence on the part of the company, whose duty it was to supply and maintain suitable and safe machinery for its work, and showing, moreover, a state of things from which the jury might have very reasonably inferred that the negligence of the company was the proximate cause of the injury complained of; that is to say, that the starting of the train was caused by the defective brakes on the stationary cars which were set in motion by the concussion produced by the eighth car, and not alone by the negligence of a fellow-servant, for which the company would not be liable. *Hough* v. *Railway Co.,* 100 U. S. 213 ; *Northern Pacific Railroad Co.* v. *Herbert,* 116 Id. 642 ; *Moon* v. *R. & A. R. R. Co.,* 78 Va. 745 ; *Norment* v. *R. & D. R. R. Co.,* 84 Va. 167 ; Whart., Neg., sec. 211.

The jury might also have reasonably inferred from the facts and evidence in the record that the casualty was caused by the absence of a " spragger," it being proved that it was customary, and therefore presumably necessary, to employ not less than two "spraggers," and one was absent when the deceased was killed. In *Jones* v. *Old Dominion Cotton Mills,* 82 Va. 140, Judge Richardson, in delivering the opinion of the court, remarked that the general rule, which exempts the master from liability to his servants for injuries received by them in the course of the employment, does not apply where he undertakes to run dangerous machinery with insufficient help, in consequence of which the servant is injured. Such conduct on the part of the master, he

said, is negligence, and constitutes a recognized exception to the general rule; citing Pierce on Railroads, 372, *note; Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Booth* v. *B. & A. R. R. Co.*, 73 Id. 738; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441.

The jury were also warranted in finding that the defence, resting upon the alleged contributory negligence of the deceased, was not sustained. There was evidence for the plaintiff tending to show that the deceased was attentive to his duties, " never had to be told a thing a second time," and was " always at his post," though one of the plaintiff's witnesses testified that he had frequently seen him away from his door when he ought to have been there. For the company there was evidence tending to show that, two days before the casualty occurred, he was found absent from his post, and discharged, by the manager of the mines, but was taken back into the service upon his promising to be more attentive; that he absented himself from his post several times before he was discharged, and that just before the casualty occurred he was absent from his door, and was seen near the mouth of chamber No. 9. One of the company's witnesses also testified that when the eighth car, above-mentioned, was brought out of the chamber, the mule driver called to him (the deceased) to go back to his door, whereupon " he started down the entrance in a run." It is proven that the distance from the mouth of chamber No. 9 to the " intake door" is two hundred and seventy-six feet, and the force of the witness' testimony is consequently weakened by his further statement, that it was not until four or five minutes afterwards that the " crash at the door was heard," when the deceased was killed. It certainly could not have taken four or five minutes for the deceased to run less than one hundred yards, and the jury were therefore warranted in inferring that he had time to return to his post at the door before the train started down the grade, and that he was not run over before he got there.

The defendant, however, in opposition to this view, also relies upon the fact that no blood was found upon the door, which was

carried away by the front car. This necessarily shows, it is contended, that the deceased was not struck at the door, but at a point above the door, and that his body was dragged by the train to and through the door. We do not think so. No blood was found upon the track above the door, though some was found upon the ground just below the door, and the record shows that for the deceased to open the door, it was necessary for him to cross the track, take hold of a handle on the door, and return to his place holding the handle. And hence the jury may have inferred that when the deceased was struck the door was partially open, and that his position on the track with reference to the door was such that he might have been struck by the train, and his body not driven against the door. At all events, the jury, whose province it was to weigh the facts of the case, found against the theory of the defendant, and we cannot properly say they were not warranted in so finding.

But it is contended that if the deceased was not killed before he reached the door, then, in view of the fact that no signal or order to open the door was given him, his attempt to open it in front of a rapidly approaching train was contributory negligence, which defeats a recovery. This position, also, is untenable. It by no means follows that the action cannot be maintained because the deceased, in attempting to open the door, acted without orders or even contrary to orders. As we have seen, the space was only five feet between the car track and the western wall of the entrance at the door, where the deceased's post of duty was, and the jury may have believed that the deceased, seeing or hearing the approaching train, and fearing the consequences to himself of a collision between the train and the door, which was made of thick, heavy timber and securely fastened, rashly attempted to open the door and thereby lost his life. This the jury may have believed from the evidence, and yet the right to maintain the action is not thereby affected if they also believed from the evidence, as they evidently and reasonably did believe, that the company was negligent, and that

the deceased was consequently put in peril, and that his act, under the circumstances, was such an act as an ordinarily prudent person might have been expected to do under like circumstances, although they may have further believed that the injury would not have happened if the act had not been done.

In Beach on Contributory Negligence, p. 42, the principle is thus stated: " When a plaintiff, through the negligence of the defendant, is placed in a situation where he must adopt a perilous alternative, or where, in the terror of an emergency, for which he is not responsible and for which the defendant is responsible, he acts wildly or negligently and suffers in consequence, such negligent conduct, under these circumstances, is not contributory negligence, for the reason that persons in great peril are not to be required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. In such a case, the negligent act of the defendant is the proximate cause of the injury, and the plaintiff may have his action."

This principle, which, in view of the tender years of the plaintiff's intestate, is peculiarly applicable to the present case, was recognized by the supreme court of the United States in *Stokes* v. *Saltonstall,* 13 Pet. 181, and by this court in *R. & D. R. R. Co.* v. *Morris,* 31 Gratt. 200, and in *B. & O. R. R. Co.* v. *McKenzie,* 81 Va. 71, and there is no better settled principle of the common law.

It is needless to say more. We will add, however, in the language of the court in *Read's Case,* 22 Gratt. 924, and as this court has repeatedly said, that where the jury and the judge who tried the cause concur in the weight and influence to be given to the evidence, it is an abuse of the appellate powers of this court, remote as it is from the scene of the transaction, having the evidence only on paper, divested of many elements which enter into every jury trial, and which, from their nature, cannot be presented on paper, to set aside the verdict and judg-

ment, because the judges of this court, from the evidence as it is written down, would not have concurred in the verdict.

The present case, viewed in the light of the rule applicable to a demurrer to evidence and of the principles indicated in this opinion, is with the defendant in error, and the judgment must be affirmed.

RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.