# Wytheville.

## SOUTHWEST. IMPROVEMENT CO. v. ANDREW.

### JULY 4th, 1889.

1. MASTER AND SERVANT— *Risks—Assumption.*—Servants entering employment accept the incident risks. If, knowing its hazards, they continue in it, they can claim no damages against the employer for injuries received while performing their duties, provided the employer uses ordinary care in selecting competent servants, supplying and maintaining safe and suitable appliances, and in general providing for the servants' safety, having regard to the dangers and difficulties of the work.

2. IDEM— *Case at bar.*—In an action by a servant against his employer for injuries received in the course of his employment, through the defendant's neglect of his duty in providing for plaintiff's safety, the evidence failed to show negligence on the part of the defendant, but that the injuries resulted from dangers incident to the employment: *held,* plaintiff cannot recover.

3. NEGLIGENCE— *Declaration—Demurrer.*—Declaration alleged that defendant did not use proper care for safety of plaintiff whilst engaged in working defendant's coal mines, and negligently permitted stones, slate, and coal to hang loosely in and about the roof of the mines where plaintiff was at work for defendant, and negligently failed to provide said roof with sufficient props to keep the loose stones, etc., from falling on plaintiff, &c. On demurrer: *held,* declaration sufficiently charges negligence upon defendant, and need not deny contributory negligence on plaintiff's part, and it was not error to overrule the demurrer.

4. VERDICT— *Motion for new trial—Rule of decision—Case at bar.*—Defendant in the case here moved the court below to set aside the verdict for plaintiff as contrary to the evidence. The motion being denied, on appeal, this court, under Code 1887, sec. 3484, applied to the consideration of the evidence the rule as upon a demurrer to evidence, and allowed the new trial.

Error to judgment of circuit court of Tazewell county, rendered June 11, 1889, in an action of tresspass on the case, wherein John Q. Andrew's administrator is plaintiff and the Southwest Virginia Improvement company is defendant. The action was instituted against the plaintiff in error, the owner and proprietor of certain coal mines situated in the county of Tazewell, by the defendant in error, for the negligent killing of his intestate while working as a laborer in said coal mines. Upon the trial in the court below the defendant demurred to the declaration, which demurrer the court overruled, and the defendant pleaded not guilty. Upon the trial, instructions were asked for on both sides, but the court gave certain instructions asked for by the plaintiff, and rejected instructions asked for by the defendant, and the defendant duly excepted. The jury rendered a verdict for the plaintiff for $4,500, and the defendant moved the court to set aside the said verdict and grant it a new trial, but that motion the court also overruled, and rendered judgment in accordance with the said verdict; whereupon the case was brought here by writ of error.

*May & May* and *John H. Fulton*, for the plaintiff in error.

*Henry & Graham* and *F. S. Blair*, for the defendant in error.

LACY, J., delivered the opinion of the court.

The first error assigned here is the action of the court in overruling the demurrer to the declaration of the plaintiff.

First. Because the declaration does not allege negligence on the part of the defendant company.

An inspection of the declaration shows a sufficient allegation of negligence. It says, " yet, the said defendant, not regarding its said duty, did not use the proper care for the safety of the said John Q. Andrew, while he was so engaged in working the said coal mines; and did not so provide and operate said coal

mines as it reasonably might have done, so that said John Q. Andrew could safely work therein, while in the employment and service of the defendant, but wholly neglected so to do, and there and then wrongfully and negligently permitted stones, slate, and coal to hang loosely in and about the said coal mines, and in and about the roof of the divers entries in said coal mines, where the said John Q. Andrew was at work for the said defendant, and when he was assigned to work and service by the said defendants;' and then and there negligently failed to provide the roofing of said coal mines with sufficient props and stays to keep the stones, slate, and coal that hung loosely in and about the said roofing, from falling in upon said John Q. Andrew, while he was at work for," &c.

There can be no question that the negligence of the defendant is here fully set out and alleged.

The second ground of exception to the declaration is, that it does not allege a want of contributory negligence on the part of the plaintiff. This is not necessary nor proper.

In an action for damages occasioned by the negligence or misconduct of the defendant, it is not necessary for the plaintiff to allege and prove the existence of due care on his part to entitle him to recover. If the defendant relies upon contributory negligence of the plaintiff to defeat the action, *he must prove it*, unless indeed the fact is discovered by the evidence of the plaintiff, or may be fairly inferred from all the circumstances.

As proof of due care is not a part of plaintiff's case, it is of course, not necessary he should aver it in his declaration. *Baltimore & Ohio R. R. Co.* v. *Whittington*, 30 Gratt., 809; *Railroad Company* v. *Gladman*, 15 Wall., U. S., 401; Shearman and Redfield on Negligence, sec. 43.

If the defendant relied on the contributory negligence of the plaintiff, it is matter of proof for him, either by testimony, adduced by, or as matter of inference deducible from the evidence of the plaintiff, but it is not the duty of the plaintiff

to negative it by proof, and no part of his case to deny it in his declaration.

In the case of the *Baltimore & Ohio R. R. Co.* v. *McKenzie*, a late case in this court, reported in 81 Va., 78, Lewis, P., delivering the unanimous opinion of this court, used the following emphatic language: "If the defendant relies on the defence of contributory negligence, it was incumbent on it to prove it, and in the absence of satisfactory proof to establish such defence, the plaintiff must be presumed to have been without fault. This, *indeed, is not disputed.*"

It is true that some of the courts in some of the states, have thrown this subject into some obscurity by conflicting and evasive decisions, as they are termed by Shearman and Redfield. And an interesting discussion of the subject, and comparison of these decisions may be found in their work on negligence, sec. 43. But we do not consider it necessary to cite nor to discuss them. The subject is well settled here in this state, upon what we consider the correct principle. That negligence on the part of the plaintiff is a mere matter of defence, to be proved affirmatively by the defendant, though it might of course be inferred from the circumstances proved by the plaintiff. This was the view held by Duer, J., in *Johnson* v. *Hudson River R. R. Co.*, 3 Deno., 21, where he pointed out that parties were never required to prove negative matters of this kind, and that it had never been held necessary, in a complaint upon negligence to aver that the plaintiff had taken due care.

We are, however, cited by the counsel for the plaintiff in error, to the case in this court of *Norfolk & Western R. R. Co.* v. *Jackson's Adm'r*, 85 Va., 306, on the rehearing here as an authority *per contra*. The opinion in that case sets forth that it is not the opinion of the court, a majority of the court not concurring therein, it was written as the expression of the views of only the writer. And, moreover, the general rule is there stated to be as set forth above.

" The general rule undoubtedly is that the plaintiff need not

aver and|prove that he was not guilty of contributory negligence, but such defence when relied on must be proved by the defendant."

That case being regarded as exceptional in character, the rule was thought to be different. Opinion of Lewis, P., p. 374. And so it is clear that this case is not ruled by that case otherwise than as we have held. We think the declaration is not defective, and that the demurrer thereto was properly overruled by the circuit court, and that there was no error in such action. See *Southwest Imp. Co.* v. *Smith*, 85 Va., 489.

The next assignment of error here is as to the action of the court in instructing the jury as to the law of the case.

Upon the ground that the instructions ignore all evidence tending to show contributory negligence and the law with respect thereto; and that they assert the liability of the master without reference to modifying facts and circumstances, showing the conduct of the servant, which modifies the liability of the master.

But while these instructions given to both sides are too voluminous to be inserted in an opinion, we will remark that the eighth instruction distinctly and very correctly meets this view, in part, and it is as follows:

" If the jury shall believe from the evidence, that the death of deceased was caused by the defendant company's negligence, and that John Q. Andrew, said deceased, by negligence on his part, contributed to his death," &c; and in the eighth instruction given upon the motion of the defendant, which is as follows :

" The court instructs the jury if they believe from the evidence that the roofing over the spot where John Q. Andrew was killed was unsafe and dangerous on Saturday next before he was killed, and that John Q. Andrew knew that said roofing was at the time aforesaid unsafe and dangerous, it was his duty to notify the defendant company or its agents of the condition of said roofing. And if they further believe from the evidence that said John Q. Andrew failed to notify the defendant com-

pany or its agents of the condition of said roof, and voluntarily went under said roof himself and was killed by the falling thereof, the plaintiff cannot recover any damage for the death of said John Q. Andrew, unless they further believe from the evidence, that the defendant company or its agents also knew that the said roofing was unsafe and dangerous on the said Saturday or at some time previous to the death of said John Q. Andrew."

The instructions, of which there are eighteen in number, and covering many printed pages, and as favorable to the exceptor as could be asked, we perceive no error therein, and there is certainly no error as against the exceptor. *Danville Bank* v. *Waddil*, 27 Gratt., 448; *Dun* v. *Seaboard & Roanoke R. R. Co.*, 78 Va. 645.

The next assignment of error here is the action of the court in overruling the motion of the defendant to set aside the verdict and grant it a new trial, upon the ground that the verdict was unsupported by the evidence, and against the evidence.

In this case some of the facts are certified as such, and then the evidence is certified.

In considering this motion we are to consider it according to the requirements of the Code of Virginia, sec. 3484, upon the principle of a demurrer to evidence by the party excepting.

The rule in Virginia upon a demurrer to evidence is to put all the evidence on both sides into the demurrer, and then to consider the demurrer as if the demurrant had admitted all that could reasonably be inferred by a jury from the evidence given by the other party, and waived all the evidence on his part which contradicts that offered by the other party, or the credit of which is impeached, and all inferences from his own evidence which do not necessarily flow from it. *Richmond and Danville R. R. Co.* v. *Moore's Adm'r*, 78 Va. 95, and cases cited.

The evidence in this case, considered under the foregoing

rule of decision, is: That the plaintiff in error is the owner and occupier of a coal mine, and that the deceased was its employee, engaged in the work of laying underground tracks in the mine proper, and the lateral tunnels called entries, and in leveling the floor of the tracks, smoothing off the ceiling, and doing whatever he was called upon to do in connection with this employment; that the ceiling of these entries generally, and of this one in question where the deceased met his death, called No. 5, was six feet high. That deceased was a sort of sub-chief, with a relay of three or four hands working with him and under his orders.

That at the point in No. 5 where Andrew was subsequently killed, there was a depression in the floor, which had to be filled up in order to make the track level, and this could not be done by bringing material from other places, because if the floor should be raised without raising the ceiling, then the ceiling would be too low to work the mules and the cars under. That for this purpose the roof was blasted off on Friday; the roof at this point was left and dressed off with picks when the shooting ceased, and there were no props or supports.

That at 1 o'clock P. M. of Tuesday, the day Andrew was killed, some of Andrew's squad went in No. 5 track-laying, and Andrew remained in No. 4 entry finishing off. That as these members of Andrew's squad went in No. 5 at 1 P. M. that day to work, one of them noticed a crack in the roof wide enough for a person to insert his hand between the slate and the sand rock; that this party, who was a witness, thought it was dangerous, but did not pay much attention to it himself, and did not call the attention of anybody else to it, because a roof generally, before it fell, by sound and small droppings of coal gave warning. That Andrew was in this entry when they were blasting down the roof on Friday, and was not there afterwards until about 4 o'clock on Tuesday, the day of his death; that then he came in and said he wanted the truck they had, and in a few minutes, as he stood waiting for it to be

emptied, some of the slate and coal of the roof fell upon him and killed him, without any previous warning whatever.

In the entry of No. 5, where Andrew was killed, there was a rock in the roof, and the crack in the roof before mentioned was between the sand rock and the slate above this rock in the roof.    That there were no props or collars supporting this roof at this point at the time Andrew was killed, but some were put up afterwards, and if the roof had been propped it would not have fallen.

This rock had been the subject of some remark, and as it protruded below the ceiling and presented an awkward appearance, might strike the mules as they passed, efforts were made by Andrew and a number of men to take it down, prize it out of the wall with iron rails and bars, but they were not able to move it, and it was left.    And the mining boss came up, looked in and asked, "Is it loose?" and one of the men replied, "Just a little bit," and the mining boss walked off and left, and the rock was not taken down because they had no powder and it was getting late—time to quit work.    That the coal and slate were sprung from the rock, and the men were trying to pull it down for that reason.    Jones, the mining boss, saw this.

It is also proved, considered under the foregoing rule, that the plaintiff in error employs skilled and efficient employees, miners, of long experience, and inspects these entries every day before the laborers are allowed to go in them, and that on the morning of the accident the inspector had been in entry No. 5 and left his inspector's mark and the date.    That these mines were liable to dropping of the ceiling, more or less dangerous, and that the miners were all instructed to look out for any disintegration, and if a roof appeared to be dangerous, that they must at once take it down—that is, punch or blast down what was loose, and that when these droppings were about to happen, the employees, being thus warned, sprang out against the face of the walls and so escaped injury, and that while it

was customary to prop up the ceiling in the rooms, it was not usual to do this to the entries.

The witness who testified that the crack was then as wide as his hand, and that the roof was dangerous, gave a written statement shortly after the occurrence, in which he said he did not consider this roof at all dangerous and *that he did not look* at it, and this statement he signed, and in his evidence testified that he did do so.

Under this evidence we are confronted with this statutory rule. We must admit as true the evidence of the plaintiff, and disregard the evidence of the defendant by which it is distinctly and flatly contradicted; indeed it contradicts itself. The same witness says he saw the crack in the roof and thought it dangerous; said also that he did not look at the roof at all, and did not consider it dangerous. Another witness in his written statement said he did not consider it dangerous to work there, and yet testified that he regarded it as a perfect death trap.

If the company daily inspected these mines, and took every general precaution to prevent accident, and had the mines inspected that, and every other day before a miner was allowed to enter it, *the fact*, to be admitted here as true, that by the light of two miner's hat lamps in an entry lined on every side by coal, and ten feet wide, six feet high, and four hundred feet long, the witness did see at 1 o'clock P. M. of the day of the accident, which was at 4 P. M., a crack as wide as his hand in this roof, cannot weigh against the company, as it had that day inspected this place, and the existence of the crack in question was neither communicated to the proper authorities, nor was the danger removed, as the orders of the company required, by this man. But how shall we consider the statement that while these men were prizing and punching at this rock with heavy iron bars, that Jones, the boss of the mines, looked on, and being informed that this rock was loose, walked

off and let it alone until Tuesday, three days after, when it fell soon after the coal and slate close to it. Are we required to consider this statement as true, although it is flatly contradicted by Jones and all others present, and although the witness himself leaves it altogether out of his written statement made at the time?

The plaintiff in error, under sec. 3484 of the Code of Virginia, has waived all of his own evidence which contradicts that offered by the defendant in error, and all inferences from his own evidence which do not necessarily flow from it, and is required to admit all that can reasonably be inferred by a jury from the evidence given by the defendant in error in the lower court. By it, says Stanard, J., in *Ware* v. *Stephenson*, 10 Leigh, 155: "The demurrant allows *full credit* to the evidence offered by the demurree, and *admits* all the *facts directly proved* by or that a jury might *fairly infer* from the evidence."

Let us now enquire whether the jury could reasonably have inferred negligence from this fact, admitting it to be true.

The evidence of the plaintiff in error not contradicted by the defendant's evidence is that this mining company employs skilled, prudent, and competent servants, experienced in the business by long service; that at 2:30 A. M. daily a skilled inspector is sent into the mines to precede the laborers, who come at 7 o'clock; that this inspector passes through all the entries and other parts of the mine with a corps of assistants, and makes a careful examination of the mine; that this official thought the rock in question was beneficial in *holding the overhead coal*, as it pushed back into a solid bed; that he and his corps report to Jones, the mine boss, every morning the condition of the mine, and he reports to the manager by six o'clock; and that on the morning of this accident the entry in question was inspected, and the mark of the inspector with the date made there; that the manager of the mine and the mine boss on Monday after the Saturday when the alleged statement was made to Jones that the rock was loose a little bit, went to this

entry, No. 5, where they were about to lay the track, and went there for the purpose of inspecting it, and from an experience of twenty-three years in such work pronounced it safe.

That although the greatest care is exercised, there is danger all the time in any mine—that air gets in, there is an expansion, and from this and many other causes dangers follow which cannot be provided against; that there was no slip in the rock or roof on Monday, it being that day specially examined by the manager of the mine and the mine boss; that this, as has been stated, was inspected on the morning of the accident, and there was no slip or crack there then. That it was the coal out . of the ceiling that killed the deceased; that he was twelve or fifteen feet from the rock when killed, and that while this rock fell, it was after he was killed. That the rock in question was examined with a lamp, and by all, including the deceased, who was present, pronounced safe. The rule is whenever a roof is considered unsafe to pull it down. Andrew and his assistants were always instructed to test the roof above them when they went to work under it, and if it should be considered unsafe to take it down. Andrew had spent thirty or forty days taking down roof. That while this place was not timbered with props, *it was not usual to timber entries;* that *new entries were never timbered;* that the rooms are timbered, but not the entries.

Under these circumstances was there more which the company could have done to guard against injury to any of the employees by falling bodies of coal out of the roof?

The defendant company was bound to use ordinary care—that is to say, such care as reasonable and prudent men use, under like circumstances, in selecting competent servants and in supplying and maintaining suitable and safe appliances for the work so to be performed, and in providing generally for the safety of the servant in the course of the employment, regard being had to the work and to the difficulties and dangers attending it, for what would be ordinary care in one case

may be gross negligence in another. *Southwest Va. Improvement Co.* v. *Smith*, 85 Va., 306, citing Beach. Contrib. Neg., 22; Thomp. Neg., 982.

It is the duty of the master, so far as he can by the use of ordinary care, to avoid exposing his servants to extraordinary risks, but he is not bound to guarantee them against such risks.

One who employs servants in a complex and dangerous business ought to prescribe rules sufficient for its orderly and safe management. His failure to do so is a personal negligence, for the consequences of which he is liable to his servants. *Riley* v. *Baxendale*, 6 Hurlst. & N., 446; *Vose* v. *Lancashire R. Co.*, 2 Hurlst. & N., 728; Sher. & Red., 122.

But when a servant enters upon an employment, he accepts the service subject to the risks incident to it. An employee who contracts for the performance of hazardous duties, assumes such risks as are incident to their discharge from causes open to him, the dangerous character of which causes he had opportunity to ascertain.

If a man chooses to accept employment and continues in it, with the knowledge of the danger, he must abide the consequences so far as any claim against the employer is concerned. *Woodley* v. *M. D. Railway Co.*, 2 L. R. Ex. Div., 389; *O'Connell's case*, 20 Md., 212; *Scally's case*, 27 Md., 589; *Wonder's case*, 32 Md., 419; *Clark* v. *R. & D. R. R.*, 78 Va., 717.

The evidence in this case shows that the danger to the employee in this, as in every other coal mine, is incident to the employment; this danger is well known and well understood; all such laborers look out for any signs or symptoms of danger in the overhead coal; all are instructed to listen for the premonitory sounds, and the warning droppings of coal in small particles; and all-instructed as to this danger, and required by the rules and orders of the master to take down all unsafe ceilings or roofs. They well understand how to avoid these dangers by springing close to the face of the entry, or room,

or other place. But in this particular case there were no warning sounds, no symptoms of unrest, no droppings of coal; without warning a quantity of coal and slate fell and killed the deceased as he stood waiting for a truck being used by two other persons; he was killed, they were unhurt.

Was this the result of any negligence on the part of the company? What duty had they neglected? Was it their duty to remove a rock that by all the tests deemed suitable by those best qualified to judge was safe? If so, still the rock does not appear to have done any injury, or to have caused any.

Was it the duty of the company to take down this quantity of coal? If so, why? According to the best judgment of all who saw it, it was held to be safe; that is, as safe as any other quantity of coal in a place dangerous everywhere, all the time.

These witnesses who say they thought it dangerous kept their opinions to themselves, and in no wise suggested this to the agents of their employers. And their conduct in going under it and working there without demur, or any concern, as they themselves state, leads to a reasonable presumption that it was not regarded as uncommonly dangerous.

We think the injury resulting here was one resulting from the ordinary business of the mine, and its hazards incident thereto; that there was no default, no negligence, on the part of the company. That the evidence discloses a management prudent and cautious, and one providing against danger to the lives and limbs of the employees as far as is possible in this dangerous service; and that there is no just ground upon which the company can be required to respond in damages for an injury not caused by it, and as to which it is in no default.

The judgment of the circuit court of Tazewell in overruling the defendant's motion to set aside the verdict and grant a new trial was, therefore, erroneous, and must be reversed and annulled, and the case will be remanded for a new trial to be had therein.

LEWIS, P.; said:

In the case of *N. & W. R. R. Co.* v. *Jackson's Adm'r*, I was of opinion that the declaration in that case, which is similar to the declaration in the present case, was defective, for the reasons I then gave. My view then was, and is now, that for the servant to maintain an action against the master for injuries received in the course of the employment, he must show that his case comes within an exception to the general rule which exempts the master from liability to the servant for such injuries, and, consequently that he must allege such a case in the declaration.

I am not aware that the precise question, as a question of pleading, ever before arose in this court; but upon principle, I am satisfied my view is correct. The question was not discussed in *Balto. & Ohio R. R. Co.* v. *McKenzie*, and the remark made by the court in that case, which is quoted in the opinion just read, was a *concessum* in the case.

However, as the court has ruled contrary to my view, and as, upon the facts disclosed by the record, I do not think the verdict can stand, I concur in the judgment to be pronounced in the present case.

JUDGMENT REVERSED.