# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MOORE v. N. & W. R. R. Co.

### March 5th, 1891.

1. NEGLIGENT INJURIES—*Duty of employees.*—Unless employee is acting under orders in remaining on or near the track, at his own peril he places himself there, and cannot recover for injury there received.  *B. & O. R. R. Co.* v. *Whittington*, 30 Gratt., p. 813.

2. IDEM—*Contributory Negligence—Case at bar.*—One, employed by railroad company as fireman, only by the trip, while off duty, negligently placed himself in such a position that a passing train must strike him : *held*, he cannot recover for injuries so received.

Error to judgment of circuit court of city of Lynchburg, rendered May 17th, 1889, in a suit wherein George H. Moore, the plaintiff in error, was plaintiff, and the Norfolk and Western Railroad company was defendant.  The judgment being in favor of the said company, the plaintiff moved the case here on writ of error.  Opinion states the case.

*Edward S. Brown*, for the plaintiff in error.

*T. J. Kirkpatrick*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

The plaintiff in error, George H. Moore, sued the Norfolk and Western Railroad Company in action of trespass on the case, to recover damages for injuries received by him on the Island Yard of the said company, in the city limits of Lynchburg, on the morning of the 4th of December, 1887, caused, as

alleged in the declaration, by the negligence of the defendant company. The defendant demurred to the plaintiff's evidence. The jury was directed to assess the plaintiff's damages, subject to the judgment of the court on the demurrer, and the jury assessed the damages at $3,212. The court sustained the demurrer, and gave judgment for the defendant company. The question presented by the record for the decision of this court, is, whether the trial court erred in sustaining the demurrer to the evidence for the plaintiff?

The facts of the case are, that the plaintiff, Moore, was a fireman on a freight train of the eastern division of the Norfolk and Western Railroad Company, which arrived at the Island Yard of the said company at Lynchburg, about 10 o'clock A. M., on Saturday, the 3d day of December, 1887, when, he being employed only by the trip, he was off duty, and out of the employ and pay of said company. His time was absolutely his own, until and unless he should choose and engage to go as fireman upon a return trip the following day, which he expected to do upon a train that he was advised would leave the following day, Sunday, between 10 and 11 o'clock A. M. The Island Yard, as its name imports, was upon an island in the James river, connected with the main land by a bridge, where a man was stationed to prevent the public, and all who were not employed by the company, from going upon the island, which was the common terminus of the eastern and western divisions, and used, exclusively, by the railroad employees. All trains, coming from both divisions, come into that yard, and all went out from that yard. At the lower or eastern end of this island, the company has a coal wharf and a coal chute, and in the yard are their enginehouses, water-tanks, turn-table, switches, side-tracks, and all arrangements for shifting, turning, and re-ordering their trains. There, too, the company had a house, by the side of its track, about twelve feet from it, and parallel to it, built upon piles set in the ground, which was, there, lower than the bed of the

road, in which they had a telegraph office, a sitting-room, and several lodging or sleeping-rooms for the occupancy of the engineers and firemen of the eastern division when they were not on duty. Moore occupied one of these rooms, to which he had a key, and in which he slept on the night of Saturday, December 3d, 1887, the day and night before the accident. Along the whole length of this house, on the side next to the track, was a platform about six feet wide, and, about its centre, it is extended in a gangway six feet wide, to within thirty inches of the railroad track, affording an entrance or passage-way, back and forth, from the house to the track. On each side of this gangway or passage, there was a hand-rail fastened on the top of posts set thirty inches from the iron rail of the track, as a barrier to prevent persons from falling, on either side, to the ground below. It was in perfect order, and, for the purposes of its designed, appropriate, and necessary use, it was absolutely safe and convenient. On Sunday morning, December 4th, 1887, between 8 and 9 o'clock, when he was not in the service or pay of the company, Moore, together with a conductor, Beazley, who, like himself, was not on duty, came out of this house on to the platform, conversing as they loitered along, till they stopped at the extreme end of the gangway next to the railroad track, where they stood, face to face, engrossed in conversation. Moore took position at the extremity of the gangway, between the two posts, with his back towards the railroad track, leaning over one of the posts, with his body protruded and projecting outwards into the space between the ends of the posts and the track of the rail-road. While he thus stood or leaned in this lounging, care-less, and dangerous attitude, with his face turned away from the track, and his attention so engrossed in conversation with his companion, Beazley, that he did not either see or hear the approach of an engine (which had three times previously passed and repassed on the tracks just by the gangway upon which he had taken his position) returning from the coal

chute 300 yards down the island to the eastward, he was struck by the engine moving westward upon the rails nearest to the gangway, twisted around and severely injured.

The declaration says: "He (Moore) was in the discharge of his duty—doing what it was right and proper for him to do"; but Moore, in his testimony, himself says that he was not on duty; that all the time between 10 o'clock Saturday morning the 3d of December, 1887, and 10 or 11 o'clock on Sunday morning the 4th of December was lost time—that he was employed and paid by the trip; that he was not on pay or in employ when he was hurt. "My face was turned west at the time the accident occurred; my back was east next to the coal chute; it was a still morning, no movements, no noise of any kind; it was a calm day; *if I had been looking in that direction I would have seen the engine.* The gang-way leads from the platform of the porch to the railroad track; it was put there for men to walk from the railroad track into the house in place of steps; there was a hand-railing to keep any one from going down there." And the counsel of the plaintiff in error, Moore, say in their printed brief: "The engineers and firemen were employed by the trip. On the eastern division they ran their trains upon the island, uncoupled their engines and turned them over to an employee on the island called a "hostler," and they were then off duty till another train was made up and ready for them to take a return trip on the eastern division. Between these trips they *were not in* the service of the company, and received no compensation for their time."

The unquestioned facts in this record—the testimony of the plaintiff out of his own mouth—show that Moore, when and where he was hurt, was not doing or discharging any duty, requirement, or service for the defendant company; that he not only carelessly and recklessly took an idle and dangerous position upon the extreme end of the gangway, with his back turned towards the track, and with his eyes, ears and mind

wholly engrossed in another direction, but that he leaned over
the post in a lounging attitude, and protruded his back *at
least six inches* beyond the terminal point of the gangway into
the space between the passing engine and the extreme point
of the gangway; and that in that posture he was so blind, deaf,
and inexcusably heedless that he did not see or hear the en-
gine, which, on returning from the coal chute, 250 or 300 yards
below, had to come a considerable part of the distance up grade
and use steam.  He was guilty, not alone of contributory
negligence, which the courts will not undertake to apportion,
but of concurring and co-operating negligence, but for which
the accident by which he was hurt could not have happened;
and it is not alleged in the declaration that this contributory,
concurring, and co-operating negligence of the plaintiff, Moore,
was known to the defendant, and that the defendant, seeing
the danger in which he had placed himself, did not exercise
the required diligence to prevent the injury.  The engineer
did not see him, or know that he had been struck; and the
evidence is distinctly that, from his position, with his engine
moving backwards and the tender in front, he could not have
seen the dangerous position and careless attitude of Moore;
and the fireman says that though he had seen the two men,
Moore and his companion, upon the platform of the house
when the engine left the coal chute, yet he did not see them
in the place where Moore was, at the extreme end of the
gangway next to the track, when he was struck.  He says,
too, that he never thought that they would put themselves in
any danger from the passing engine, inasmuch as they were
railroad men, fully experienced and familiar with that place
and all the accustomed, appointed and necessary operations of
that yard.

In the case of *Dunn* v. *Seaboard & Roanoke Railroad Com-
pany*, 78 Va., a *passenger*, with his elbow resting on the sill of
an open window, and extending only *two inches*, was struck
and injured by contact of his elbow against a pile of wood

stacked up by the side of the track.   In that case Judge Lacy said, for this court, "It seems to be the better rule, both upon authority and upon reason, that the passenger being endowed with intelligence which enables him to foresee and to avoid danger, the exercise of at least ordinary prudence is required on his part to escape it; and if, by failure to exercise these faculties for his own preservation, a misfortune befall him, *though the carrier may have been in fault*, it will be attributed to his own carelessness and inattention, and the responsibility will not be thrown on the carrier."   And, after citing and reviewing numerous English and American cases, he says, "It is better, we think, to adhere to the rule already established in this court, cited above, that 'one who is injured by the mere negligence of another cannot recover any compensation for his injury if he, by his own ordinary negligence or wilful wrong, contributed to produce the injury of which he complains; so that, but for his concurring and co-operating fault, the injury would not have happened to him; except where the direct cause of the injury is the omission of the other party, *after becoming aware of the injured party's negligence* to use a proper degree of care to avoid the consequences of such negligence.' " *Tuff* v. *Warman*, 52 B. (N. S.), 573; *R. R. Co.* v. *Anderson*, 31 Gratt., 812.

Moore was not a passenger, and he was not in the place and posture in which he was when he was hurt, in the discharge or performance of any duty to or for the company.   He had voluntarily, needlessly and inadvertently placed himself in a place and posture of manifest danger, against which he took no precautions; but turned his face away from the tracks; and while looking in a different direction, was so engrossed in conversation that he neither saw nor heard the moving engine, though all the surroundings were quiet and still.   There was no duty, propriety or necessity for his stopping and standing where he did, and still less for his lounging attitude, in a

place of peril; and it was his duty to be on his guard and on the lookout against danger.

In the case of *Whittington* v. *Baltimore & Ohio R. R. Company*, 30 Gratt., after discussing the general duty and obligation of all persons in and about railroad tracks to use ordinary care to avoid injuries, Judge Staples says, "These principles of law apply with peculiar force to employees of a railroad company, who are in the relation of privity with their principals; have every opportunity of becoming well acquainted with the business, and are presumed to know and understand something of the risks and dangers incident to the business. From such persons a greater degree of care in avoiding dangers ought to be required *than from passengers* and others having no privity with the company, and no especial acquaintance with the operations of the road. And this distinction is not only sustained by the authorities, but is founded in reason and sound policy."

In the case of *Darracott* v. *C. & O. R. R. Co.*, 83 Va., the plaintiff was injured while engaged in the effort and duty of coupling cars, and he claimed that the fixtures were defective, and thus the cause of his injury; but, in that case, Lewis, P., says, "The dangerous condition of the coupling was obvious, and the plaintiff, in violation of the rules, voluntarily put himself in a position of danger, in consequence of which he was injured. Under these circumstances, in the eye of the law, he was the author of his own misfortune." "His negligence, or what is the same thing, his failure to use reasonable and proper care and caution, was the proximate cause of the injury complained of." * * * "There are also certain correlative duties on the part of the employee to the company; * * one of these is to use ordinary care to avoid injuries to himself; for the company is under no greater obligation to care for his safety than he is himself. * * And he must inform himself, as far as he reasonably can, respecting the dangers as well as the duties incident to the service." (See, also,

in this connection, *Southwest Improvement Co.* v. *Andrews*, 86 Va., 270, and cases on this question there cited by Judge Lacy; and *C. & O. R. R. Co.* v. *Lee*, 94 Va., 642; *N. & W. R. R. Co.* v. *Cottrell*, 83 Va., 312.)

The rule established by these decisions of this court to be applicable to employees, even in the active and requisite performance of their duties, applies, with greater force and reason, to employees when off duty and having absolute control of their time and themselves, they loiter carelessly about the railroad tracks; and, having voluntarily put themselves in a place and posture of obvious danger, they heedlessly fail to use their senses to avoid injury from the necessary and appointed operations of a shifting and coaling-yard engine of the company.

Even if it be established, by the evidence in this record, that the defendant company's servants were negligent, and violated an ordinance of the city of Lynchburg having reference to the streets of the city, despite the fact that this island-yard is the insulated and exclusive property of the company for its own necessary operations, still the doctrine of contributory, concurring and co-operating negligence of the plaintiff, precludes any recovery upon the facts in this case; which show, indisputably, that the plaintiff in error was, by his own voluntary, unnecessary and heedless incaution, guilty of gross negligence, which was the cause of the injury he received. (*Norfolk & Western R. R. Co.* v. *Ferguson*, 79 Va.; *R. & D. R. R. Co.* v. *Yeamans*, 86 Va.)

This disposes of the whole case; and it is unnecessary to consider the question of fellow-servants or co-employees, raised and elaborately argued by counsel.

The circuit court did not err in sustaining the demurrer to the evidence; and we are of opinion to affirm the judgment in favor of the appellee.

Judgment affirmed.